[No. 12460-9-I. Division One. May 13, 1985.]

ROBERT V. WARD, ET AL, *Respondents,* v. CECO CORPORATION, *Appellant.*

*Reed, McClure, Moceri & Thonn* and *William R. Hickman,* for appellant.

*Merrick, Hofstedt & Lindsey* and *H. J. Merrick,* for respondents.

SWANSON, J.—The primary issue raised in this appeal is whether the Washington Industrial Safety and Health Act of 1973 (WISHA) and regulations promulgated thereunder impose a nondelegable duty upon a subcontractor on a multi–employer jobsite to erect handrails for the protection of employees other than those employed by the subcontractor.

The facts are undisputed. While working on the construction site of the Daon Building in Seattle on July 7, 1980, Robert V. Ward slipped and fell from a wooden platform erected by Ceco Corporation, a subcontractor. Ward was the labor foreman for the general contractor, Sellen Construction Company.

Sellen had engaged Ceco to erect wooden forms for concrete ramps, slabs, and beams in the parking garage. Once a portion of the forms had been erected, Ceco employees sprayed an oil substance onto the forms to facilitate their later release from the concrete. Other subcontractors then installed electrical conduits and reinforcing bars, and Sellen thereafter poured the concrete. Once the concrete cured, Ceco removed the forms and re-erected them to continue the spiraling growth of the garage.

Before Ceco employees finished erecting the forms for the "A" level, they were informed that construction would be stopped until the construction plans were modified. They erected no guardrail along the leading edge of the construction before leaving the site on July 3, 1980.

On the, following Monday, July 7, 1980, Ward walked over to the leading edge of the forms on the "A" level in search of an air hose. As he turned around, he slipped on an accumulation of oil which Ceco employees had sprayed on the forms, fell 10 to 14 feet to the level below, and suffered injuries. Ceco employees were not on the site at the time Ward fell.

Ward sued Ceco alleging that regulations promulgated by the Director of Labor and Industries required Ceco to erect guardrails and that Ceco's failure to erect these guardrails proximately caused his injuries.

Ceco sought to amend its answer and assert a third party claim against Sellen on the basis that the Sellen–Ceco contract delegated to Sellen all responsibility for the erection and maintenance of guardrails. The court denied this motion. This denial is not challenged on appeal. Ceco subsequently sued Sellen for indemnity. The indemnity action is not before us and its status has no bearing on our decision here.

Prior to trial, Ward moved in limine to prevent Ceco from introducing evidence of the written contract between Ceco and Sellen. Ceco again alleged that the contract delegated to Sellen all responsibility for the erection of handrails. The court granted Ward's motion to exclude evidence

of the contract based on its conclusion that the WISHA regulations imposed on Ceco a nondelegable duty to erect handrails. Ceco challenges this ruling on appeal.

During direct examination, Ward testified that, based on the custom and practice in the industry, Ceco had the responsibility to erect the handrails. During the rebuttal phase of the trial, Lawrence Garcin, the assistant superintendent of Sellen during construction of the Daon Building, testified that the duty to erect the handrails fell upon Ceco because Ceco created the hazardous condition. When asked on cross examination by counsel for Ceco how he knew Ceco had this duty, Garcin answered, "Because I read the contracts." The court then upheld an objection by Ward's counsel as to this line of inquiry. The district manager for Ceco testified on cross examination by Ceco's counsel that Sellen had the responsibility to erect the handrails and that the scope of Ceco's work specifically excluded the erection of protective devices. Ceco asserted that these portions of the testimony "opened the door" to the introduction of the contract. The trial court disagreed. That decision is also challenged on appeal.

Finally, Ceco excepted to several of the court's instructions regarding Ceco's duties under the WISHA regulations to employees other than its own and excepted to the court's refusal to instruct the jury that it should consider the Sellen–Ceco contract.

The jury returned a $400,000 verdict in favor of Ward. However, because the jury found Ward 50 percent contributorially negligent, the court reduced the judgment to $200,000. This appeal followed.

WISHA provides in pertinent part that each employer:

(1) Shall furnish to each of *his employees* a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to *his employees*: . . . and
(2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

(Italics ours.) RCW 49.17.060.

Ceco argues that adoption of this statute in 1973 effected a change in the scope of the duty imposed on employers. Whereas the former law[1] imposed a duty to provide a safe place to work for *all* workmen, *Bayne v. Todd Shipyards Corp.*, 88 Wn.2d 917, 568 P.2d 771 (1977),[2] Ceco argues this emphasized portion of RCW 49.17.060 enacted in 1973 indicates the Legislature's intent to impose a duty on an employer to provide a safe place to work *only* for his employees.

On the other hand, Ward contends that such a reading of

---

[1]RCW 49.16.030 provided:

"For the purposes of RCW 49.16.010 through 49.16.150, it shall be the duty of every employer to furnish a place of work which shall be as safe for workmen therein as may be reasonable and practicable under the circumstances, surroundings and conditions, and to furnish and use such safety devices and safeguards and to adopt and use such practices, means, methods, operations and processes as under the circumstances, surroundings and conditions are reasonable and practical in order to render the work and place of work safe, and to comply with such standards of safety of place of work and such safety devices and safeguards and such standards and systems of education for safety as shall be from time to time prescribed for such employer by the director of labor and industries through the division of safety, or by statute, or by the state mining board."

[2]In *Bayne v. Todd Shipyards Corp.*, 88 Wn.2d 917, 568 P.2d 771 (1977), the plaintiff fell from a loading platform while delivering goods to the defendant's premises. The platform did not have guardrails as required by safety regulations promulgated by the Director of Labor and Industries under authority of the former RCW 49.16.030. The court concluded that the duty imposed by the regulations extended to *all* workmen.

Defendant contends that plaintiff was not within the protected class because he was not an employee of the defendant. The statute requires a safe place of work for workmen. It does not limit it to employees of the defendant employer. A worker who is lawfully on the premises in pursuit of his own employment and at the invitation of the third party, defendant here, is entitled to the benefit of the statute and the regulation. *See Pierson v. Holly Sugar Corp.* [107 Cal. App. 2d 298, 237 P.2d 28 (1951)], which so holds, stating that the regulation was a safeguard for the public generally which necessarily included a workman making a delivery who was not an employee of the defendant. Extension of the protection of the regulation to the public generally is not before us.

*Bayne*, at 920–21. Although the statute had been altered prior to the *Bayne* decision, the court did not mention the effect the change may have had. Further, the changes did not alter the public policies underlying the statutes and regulations; nor did they alter the WISHA requirement that the safety requirements of the Occupational Safety and Health Act of 1970 be met.

the statute is too restrictive and that, in any event, section 2 of RCW 49.17.060 commands every employer to comply with regulations adopted pursuant to WISHA which regulations impose a nondelegable duty to provide a safe place to work for *all* workmen.

WAC 296–155–505(4)(a) provides in part:

> Every open–sided floor or platform 6 feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, as specified in (6)(a) of this section, on all open sides, except where there is entrance to a ramp, stairway, or fixed ladder.

This applies to "temporary or emergency conditions where there is danger of employees or materials falling through floor, roof, or wall openings, or from stairways or runways." WAC 296–155–505(1). The duty to erect this guardrail is imposed on employers by WAC 296–155–040 which provides in part:

> (1) Each employer shall furnish to each of *his employees* a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to *his employees.*
>
> (2) Every employer shall require safety devices, furnish safeguards, and shall adopt and use practices, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every thing reasonably necessary to protect the life and safety of employees.

(Italics ours.) While section 1 indicates that the duty to provide a safe place of employment arises only with respect to the employees of each employer, section 2 imposes a duty to install safety devices for the "safety of employees" generally.

Ceco was an "employer"[3] as that term was used in WAC 296–155–040. Therefore, it had the duty to erect guardrails along the leading edge of the wooden forms, which were more than 6 feet above the lower level, provided the leading edge of the wooden forms was (1) an "open–sided floor or

---

[3]*See* WAC 296–155–012(11) defining "employer".

platform 6 feet or more above [an] adjacent floor", WAC 296–155–505(4)(a), (2) a temporary or emergency condition creating a danger to employees, WAC 296–155–505(1), which (3) was under control of or created by Ceco. *Accord, Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 582 P.2d 500 (1978); *Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255 (4th Cir. 1974). Resolution of these three elements rests upon factual findings, and the record contains substantial evidence which supports a finding that all three elements were present. Thus, Ceco had a duty to erect guardrails.

Because RCW 49.17.060(1) and WAC 296–155–040(1) impose an undisputed duty upon Ceco to erect guardrails for the protection of its own employees, we interpret the equally plain language of section 2 of the same statute and section 2 of the same regulation as imposing upon Ceco the duty to protect other workers whom Ceco had reason to know would be working within the "zone of danger" created by Ceco (*i.e.,* oil coated flooring near the edge of an elevated platform). Such a conclusion furthers the purposes underlying WISHA,[4] meets the requirement that the WISHA standards meet or exceed the requirements of the Occupational Safety and Health Act of 1970 (OSHA), which requires employers having control over the workplace to provide a safe place of work for *all* employees, *Kelley v.*

---

[4]The purpose of the Washington Industrial Safety and Health Act of 1973 is set forth in RCW 49.17.010. It provides:

"The legislature finds that personal injuries and illnesses arising out of conditions of employment impose a substantial burden upon employers and employees in terms of lost production, wage loss, medical expenses, and payment of benefits under the industrial insurance act. Therefore, in the public interest for the welfare of the people of the state of Washington and in order to assure, insofar as may reasonably be possible, safe and healthful working conditions for *every man and woman working* in the state of Washington, the legislature in the exercise of its police power, and in keeping with the mandates of Article II, section 35 of the state Constitution, declares its purpose by the provisions of this chapter to create, maintain, continue, and enhance the industrial safety and health program of the state, which program shall equal or exceed the standards prescribed by the Occupational Safety and Health Act of 1970 (Public Law 91–596, 84 Stat. 1590)." (Italics ours.)

*Howard S. Wright Constr. Co., supra; see Beatty Equip. Leasing, Inc. v. Secretary of Labor,* 577 F.2d 534 (9th Cir 1978) (under OSHA, subcontractor creating hazard at a multi–employer jobsite owes duty to employees of other subcontractors who are exposed to the hazard), and places the burden on the party best able to avoid the potential danger.

In *Lamborn v. Phillips Pac. Chem. Co.,* 89 Wn.2d 701, 575 P.2d 215 (1978), an employee of an independent contractor sued Phillips, the owner of the premises on which he was working, alleging Phillips failed to provide him a safe place to work and reasonably safe equipment. The court stated at page 707:

> The owner of a premises owes to the servant of an independent contractor, employed to perform work on that owner's premises, the duty to avoid endangering him by the owner's own negligence. *In short, he owes the same duty of care to the on–premise servants of another master as he owes to his own employees.*

(Citations omitted. Italics ours.) Similarly, a subcontractor having control, albeit control shared with the general contractor, over the workplace owes employees of another master the same duty owed to its own employees, particularly where the subcontractor created the dangerous condition within the workplace. *See Kelley v. Howard S. Wright Constr. Co., supra,* where the court recognized that OSHA regulations apply to all employers, but only the employer(s) having control over the area in which the hazard exists, or the employer *assuming* the responsibility for safety precautions, must comply with the regulations.

██ The fact that Ceco's employees had left the "zone of danger" and were not present at the time Ward fell does not eliminate Ceco's duty to erect the guardrails. Ward was entitled to the benefit of the statutes and regulations, *accord, Brennan v. Gilles & Cotting, Inc., supra; Beatty Equip. Leasing, Inc. v. Secretary of Labor, supra,* and Ceco's violation of WISHA and the regulations promulgated thereunder amounted to negligence per se. *Bayne v.*

*Todd Shipyards Corp., supra. See Kelley* (violation of OSHA regulations is negligence per se).

Even assuming Ceco owed Ward this duty, Ceco maintains that the duty was delegable and that it contractually delegated the duty to Sellen. Therefore, Ceco continues, evidence of the Sellen–Ceco contract was admissible to establish that delegation. Of course, the admissibility of the contract depends upon the validity of the asserted contractual delegation of the statutory and regulatory duty to erect a guardrail, vis–a–vis Ceco and Ward. To support its argument, Ceco cites *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 549 P.2d 483 (1976), *Lamborn v. Phillips Pac. Chem. Co., supra,* and *Kelley v. Howard S. Wright Constr. Co., supra.*

In *Fenimore,* an employee of a subcontractor sued the general contractor for negligently causing his injuries. The contract between the subcontractor and general contractor was admitted without objection to show who had "control" over the instrumentality causing the plaintiff's injuries and, therefore, who owed Fenimore the duty of care which was breached. Only one of the parties could have had control. Thus, only one owed the duty which was breached. In our case, however, both Ceco and Sellen could have maintained control over the workplace. Therefore, both Ceco and Sellen could have had a duty to provide a safe workplace. *See Kelley.*

An additional issue in *Fenimore* was causation. Thus, the court ruled that evidence of the subcontractor's negligence, proximately causing the accident, was properly admitted to prove the general contractor's theory of the case that the subcontractor's negligence was the *sole* cause of the accident. Causation was not disputed in our case, however. The only issue was whether Ceco had a duty, and the resolution of our issue is one of law, based upon factual findings that Ceco had control over the dangerous area or created the dangerous condition which Ward might reasonably have been expected to encounter. Hence, *Fenimore* is inapposite.

In *Lamborn,* as noted above, an employee of an indepen-

dent contractor sued Phillips, the owner of the premises, for injuries he sustained while filling his employer's truck with liquid ammonia at Phillips' plant. The court upheld the admission of evidence showing negligence on the part of the independent contractor because it tended to establish that the negligence of the plaintiff and his employer was the *sole* proximate cause of the plaintiff's injury. As in *Fenimore,* the issue was causation, not whether Phillips owed Lamborn a duty or whether the duty had been delegated. Further, no WISHA or OSHA regulations were discussed. Therefore, it too is inapposite.

The court considered the contract between the general contractor and subcontractor in *Kelley v. Howard S. Wright Constr. Co., supra.* The issue before the court there was whether a general contractor on a multi–employer jobsite had a duty to take safety precautions for the benefit of employees of subcontractors working on the site. The case involved no issue of delegation. Rather, the contract was considered only to determine whether the general contractor had *assumed* a duty. Further, the court did not determine that assumption of the duty by the general contractor relieved the subcontractor from its duty. In fact, the court specifically stated that the duty to provide a safe workplace, imposed by former RCW 49.16.030 on all employers, was nondelegable. *Kelley,* at 333. Thus, this case also fails to support appellant's argument.

We find *Guy v. Northwest Bible College,* 64 Wn.2d 116, 390 P.2d 708 (1964) instructive. In that case, an employee sued her employer for injuries suffered when a screen constructed, erected, and maintained by her employer, fell upon her. The employer cross–complained against the architects, claiming defective design caused the screen's fall. The court concluded that the employer had a nondelegable duty to provide a safe place to work:

"The duty to furnish safe tools, machinery, appliances, and places for work is a positive, affirmative duty resting on the master, and cannot be delegated to another, or, rather, cannot be delegated to another so as to relieve the

master of his primary liability, and the agency or person to whom the duty is attempted to be delegated is immaterial. This is true no matter how carefully the person or agency to whom the duty is attempted to be delegated is selected or how competent or reputable he or it may be. . . ."

*Guy,* at 119 (quoting 56 C.J.S. *Master and Servant* § 204 (1948)). This principle was reaffirmed in *Kelley,* as noted above, where the court specifically recognized that the duty former RCW 49.16.030 imposed on all employers to provide a safe place to work was nondelegable. *Kelley,* at 333. Similarly, the duty imposed on Ceco to erect a guardrail for the safety of all employees by statute and regulation was nondelegable. *See Short v. State Comp. Ins. Fund,* 52 Cal. App. 3d 104, 125 Cal. Rptr. 15 (1975); *Kirk v. Kemp Bros.,* 12 Cal. App. 3d 136, 90 Cal. Rptr. 553 (1970); *Morehouse v. Taubman Co.,* 5 Cal. App. 3d 548, 85 Cal. Rptr. 308 (1970). Consequently, any provision in the contract between Ceco and Sellen designed to shift the duty to Sellen is invalid as to the injured employee. Thus, evidence concerning the Sellen–Ceco contract is irrelevant and, therefore, inadmissible. ER 402.

Ceco nevertheless insists that the "door was opened" to cross examination of witnesses with respect to the contract. We have carefully reviewed those portions of the record cited by appellant in support of this argument, and we cannot agree with appellant's contention. Furthermore, even if the plaintiff technically "opened the door" to cross examination regarding the contract, evidence concerning the contract was irrelevant and therefore inadmissible because Ceco's obligation was nondelegable. Therefore, it cannot be said that the trial court abused its discretion by refusing to admit evidence of the contract.

In summary, WISHA and the regulations promulgated thereunder imposed a nondelegable duty on Ceco to erect the guardrails for the protection of all employees reasonably expected to come within the "zone of danger" which Ceco created. Therefore, the trial court properly excluded

all evidence relative to the Sellen–Ceco contract which tended to establish a delegation of that duty.

In view of our disposition of the delegation of duty question, the alleged instructional errors are without merit.

Accordingly, the judgment is affirmed.

COLEMAN and GROSSE, JJ., concur.

Review denied by Supreme Court July 26, 1985.