[No. 15521–1–I. Division Three. August 27, 1986.]

CHESTER L. STRAW, *Appellant,* v. ESTEEM CONSTRUCTION COMPANY, INC., ET AL, *Respondents.*

*David W. Gossard,* for appellant.

*Laura M. Murphy* and *Carney, Stephenson, Badley, Smith, Mueller & Spellman; J. Richard Crockett* and *Detels, Madden, Crockett & McGee,* for respondents.

GREEN, C.J.*—Mr. Straw sustained injuries while work-

---

*This case was heard by a panel of Division Three judges sitting in Division One.

ing on a construction site in March 1980. Subsequently he brought this personal injury action against Esteem Construction. Esteem moved for summary judgment and Mr. Straw moved for partial summary judgment on the issue of liability. Esteem's motion was granted and Mr. Straw's motion was denied. Mr. Straw appeals. The sole issue is whether Esteem Construction, as general contractor, had a statutory or common law duty to provide Mr. Straw, as an employee of a subcontractor, a safe place to work.

Esteem contracted to construct a home for Mr. Donoghue on Mercer Island. It subcontracted the drywall work to A & M Drywall. Without Esteem's knowledge, A & M Drywall subcontracted a portion of the work to Apollo Drywall. According to Mr. Straw's deposition, on March 24, 1980, he and two other employees of Apollo went to the site to prepare it for spray texturizing. There was no one at the site that day, other than the owner who dropped by to check the progress of the work. Mr. Straw noticed an uncovered spiral staircase opening on the second floor and placed a wood plank over it to insure none of the crew would fall into it. When Mr. Straw and his men left, the plank was in place. The following day Mr. Straw and his fellow employees arrived at the site to do the spraying. He and his men were the only people at the construction site. In the process of spraying, Mr. Straw stepped into the spiral staircase opening, which was at that time uncovered, and injured himself resulting in this action.

Mr. Donoghue, the owner, in his affidavit stated that he had been on the site the morning of the accident and the plywood plank was in place. In his opinion, the plank was large enough that, in order to expose the opening, it would have to be intentionally removed. The affidavit of the owner of Esteem stated that as general contractor its role was limited to coordinating the timing of the construction. To that end, the owner of Esteem made it a regular practice to check progress at the site. The affidavit further stated the plank had been provided by Esteem because of the need to work in that corner; anything which would have

obstructed that corner would have been unworkable. Additionally, the plank served the purpose of preventing someone from falling through the hole. When the owner of Esteem had occasion to check the site, he had always found it covered. On this job, Esteem followed the usual industry custom that only the drywallers would be on the site while doing their work.

Mr. Straw contends Esteem, as general contractor, had a statutory and common law duty to provide him a safe place to work.

We start with the general rule that one who engages an independent contractor is not liable for injuries to the contractor's employees resulting from the contractor's work. *Epperly v. Seattle*, 65 Wn.2d 777, 399 P.2d 591 (1965); *Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 635 P.2d 426 (1981); Restatement (Second) of Torts § 409 (1965). Several exceptions have been carved out of this rule based on common law, statute, and contractual assumption of duty. *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 582 P.2d 500 (1978).

First, Mr. Straw argues Esteem owes a duty to him based on its responsibility to implement the safety measures of WAC 296–155–505:

(2) Guarding of floor openings and floor holes.
(a) Floor openings shall be guarded by a standard railing and toe boards or cover, as specified in subsection (6) of this section. . . .

. . .
(6) Standard specifications.
(e) . . .
(ii) The floor opening cover shall be capable of supporting the maximum intended load and so installed as to prevent accidental displacement.

Mr. Straw argues the plank was not installed in such a way as to prevent accidental displacement, the violation of which results in negligence per se.

■■ Before we reach the issue of whether the Legislature intended to impose strict liability for violation of the regulation at issue, we must determine whether the regula-

tion imposed a nondelegable duty on Esteem to insure the safety of all employees on the work site. We first turn to WAC 296–155–040 which provides:

Safe place standards. (1) Each employer shall furnish to each of *his employees* a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to *his employees.*

(Italics ours.) The language of this section clearly places the responsibility on *both* Esteem and Apollo Drywall, as employers, for furnishing a place of employment free from recognized hazards for their respective employees. However, the language of this section cannot be construed to create a nondelegable duty in Esteem for the safety of another independent contractor's employee. *Ward v. Ceco Corp.*, 40 Wn. App. 619, 699 P.2d 814, *review denied*, 104 Wn.2d 1004 (1985).

The court in *Ward,* however, construed subsection (2) of the same regulation to impose a nondelegable duty on a subcontractor to comply with safety regulations for the benefit of an employee of a general contractor who was injured on the work site. WAC 296–155–040(2) states:

Every employer shall require safety devices, furnish safeguards, and shall adopt and use practices, methods, operations, and processes which are reasonably adequate to render *such employment* and place of employment safe. Every employer shall do every thing reasonably necessary to protect the life and safety of employees.

(Italics ours.) The court in *Ward,* interpreting subsection (2), held that the subcontractor, Ceco, as an "employer", had a duty to comply with the safety regulations for temporary or emergency conditions creating a danger to employees generally, including employees of other contractors. WAC 296–155–505(1).

We decline to adopt this analysis. Statutory language must be interpreted with reference to the general object and purpose of the legislation and the statutory text read as a whole. *Eastlake Comm'ty Coun. v. Roanoke Assocs.*, 82 Wn.2d 475, 513 P.2d 36, 76 A.L.R.3d 360 (1973). We believe

subsections (1) and (2) of WAC 296–155–040 must be construed together. Subsection (1) applies only to the contractor's own employees. Subsection (2) enunciates more specifically what that employer's duties are to such employees in order to carry out the purpose of subsection (1). The language of subsection (2) requires the employer to use such safety devices, safeguards, and practices which will render "such employment" and "place of employment" safe. Since there is no express language in the regulation creating a nondelegable duty, we will not construe one. *Tauscher,* at 285–86. We find that WAC 296–155 does not create a nondelegable duty in Esteem and thus we need not reach the negligence per se question.

Second, Mr. Straw asserts two common law exceptions to the general rule of nonliability by a general contractor are applicable here where the general retains control over the work and where the general is personally negligent. *Kelley v. Howard S. Wright Constr. Co., supra.*

Under the first exception, Mr. Straw argues Esteem's control encompassed the safety of the spiral staircase opening because Esteem had framed it. Esteem contends its duty was limited to coordinating control of the work and within that scope it was not negligent. To find otherwise would make it strictly liable by virtue of its title as "general contractor." The test for control is not actual interference with the work of the subcontractor, but the right to exercise control where the general retains control over some part of the work. *Kelley,* at 330–31; Restatement (Second) of Torts § 414 (1965). This is usually a question of fact, but may be determined as a matter of law where the facts are not disputed or are susceptible of only one interpretation. *S.S. Kresge Co. v. Port of Longview,* 18 Wn. App. 805, 573 P.2d 1336 (1977). The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship. *Epperly,* at 785.

The control necessary to establish a duty of care is where the contractor affirmatively assumes a duty, such as fur-

nishing lighting, *Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 364 P.2d 796 (1961), or assumes the responsibility for implementing safety precautions. *Kelley v. Howard S. Wright Constr. Co., supra* at 330–31. Here, Esteem's role was limited to coordinating the timing of the construction. That, in and of itself, does not encompass a duty to make the premises safe for a subcontractor's employee. *Epperly v. Seattle, supra.* Esteem's framing the hole is not the type of affirmative act which would indicate it retained control over the subcontractor's work. Moreover, Mr. Straw's reliance on *Kelley* is misplaced. In *Kelley* the court found the contractor had assumed contractual responsibility for initiating and maintaining a safety program, and thus responsibility for supervising the subcontractor's work to insure it complied with safety standards. Here, Esteem did not contractually assume the responsibility for the safety of its subcontractors' employees.

Under the second exception, Mr. Straw contends Esteem was personally negligent because the uncovered floor was an extrahazardous condition which Esteem knew existed and should have remedied. Esteem argues it could not have been personally negligent because Mr. Straw and his fellow employees were the only ones at the site on the day of the accident.

When work by its very nature creates some peculiar risk of injury and the general contractor has reason to know of the inherent hazards of the work, the general contractor has a duty to take responsible precautions against those hazards. *Epperly v. Seattle, supra; Tauscher v. Puget Sound Power & Light Co., supra.* Mr. Straw admits the spray texturizing he was engaged in is not inherently hazardous work, but rather contends the work area was hazardous. What Mr. Straw is actually contending is the general contractor must take precautions against patent defects. However, the law recognizes no such exception. In fact, the law only recognizes an exception where the contractor–owner knows or has reason to know of *latent* dan-

gers which the contractor's employee could not reasonably have discovered. *Epperly,* at 786. The floor opening was an obvious part of the structure. Mr. Straw was not only aware of the opening, but in fact placed the plank over it himself. At best, Esteem owed a duty not to endanger Mr. Straw by its own negligence or affirmative act, but is not obligated to protect him from his own or his employer's or fellow servant's negligence. *Murk v. Aronsen,* 57 Wn.2d 785, 359 P.2d 816 (1961). There is nothing to suggest the floor opening was negligently constructed or that one of Esteem's employees had removed the plank. We, therefore, find no error in granting summary judgment in favor of Esteem.

Affirmed.

MUNSON and THOMPSON, JJ., concur.