[No. 56267-9. En Banc. March 29, 1990.]

ANDRE STUTE, *Petitioner, v.* P.B.M.C., INC., *Respondent.*

*Brown, Crosta & Brown* and *Bradley K. Crosta; Sinsheimer & Meltzer, P.S.,* and *Ronald J. Meltzer,* for petitioner.

*Lee, Smart, Cook, Martin & Patterson, P.S.,* by *Ronald C. Gardner,* for respondent.

UTTER, J.—Petitioner seeks review of a Court of Appeals decision denying his motion to modify the Commissioner's ruling. The Commissioner of the Court of Appeals ruled that, as general contractor, respondent did not owe the petitioner, an employee of a subcontractor, a duty to comply with regulations promulgated under the Washington Industrial Safety and Health Act of 1973 (WISHA). We

reverse the Commissioner's ruling, and hold the general contractor has a duty to comply with all pertinent safety regulations with respect to every employee on the jobsite.

P.B.M.C., Inc., a general contractor, contracted with Lincoln Highland Village Associates to construct a condominium complex. P.B.M.C. orally subcontracted with S&S Gutters to install gutters and downspouts. On March 13, 1984, Mr. Stute, an employee of S&S Gutters, was installing gutters and slipped off the roof, falling three stories. The roof was slippery from recent rain. There was no scaffolding or other safety equipment to break the fall. Mr. Stute fractured three vertebrae and a bone in one foot. P.B.M.C. knew that employees of the subcontractor were working on the roof without safety devices.

Stute sued P.B.M.C. alleging it owed him a duty to provide necessary safety devices at the jobsite. P.B.M.C. moved for summary judgment, which was granted. The trial court found the general contractor did not owe Stute, an employee of a subcontractor, a duty to provide safety equipment because the general contractor had not voluntarily assumed the duty in its contract with the owner or subcontractor. It also found P.B.M.C. had not retained authority to control the safety practices of the subcontractor. Stute moved for reconsideration, which was denied. Stute appealed to the Court of Appeals. P.B.M.C., meanwhile, moved for dismissal on the merits. The Commissioner of the Court of Appeals granted P.B.M.C.'s motion and summarily affirmed the trial court's decision. He found that P.B.M.C. owed Stute no duty because Stute was not an employee of P.B.M.C., relying on *Straw v. Esteem Constr. Co.*, 45 Wn. App. 869, 728 P.2d 1052 (1986). Mr. Stute moved to modify the Commissioner's ruling claiming that *Straw* conflicts with two of this court's decisions as well as a Court of Appeals decision. The Court of Appeals denied his motion. Mr. Stute then petitioned this court for review. We granted the petition for review on September 5, 1989.

# I

The Commissioner erred in ruling that the statutory directive to employers to comply with safety regulations applies only to direct employees and not to employees of subcontractors.

The Washington Industrial Safety and Health Act of 1973 is codified at chapter 49.17 of the Revised Code of Washington. RCW 49.17.060 provides:

> Each employer:
> (1) Shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees . . . and
> (2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

WAC 296–155–040 provides in part:

> (1) Each employer shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees.
> (2) Every employer shall require safety devices, furnish safeguards, and shall adopt and use practices, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every thing reasonably necessary to protect the life and safety of employees.

RCW 49.17.060 creates a twofold duty. *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 153, 750 P.2d 1257, 756 P.2d 142 (1988). Subsection (1) imposes a general duty on employers to protect only the employer's own employees from recognized hazards not covered by specific safety regulations. Subsection (2) imposes a specific duty to comply with WISHA regulations. *Adkins*, 110 Wn.2d at 153. Thus, the employer's liability depends upon which section is being invoked. The employer's duty only extends to employees of independent contractors when a party asserts that the employer did not follow particular WISHA regulations. In such a case, all employees working on the premises are members of the protected class. *Adkins*, 110 Wn.2d at 153.

The court in *Adkins* followed *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 709 P.2d 774 (1985). The court described the twofold duty under RCW 49.17.060, and then determined that the specific duty clause is not confined to just the employer's own employees but applies to all employees who may be harmed by an employer's violation of the WISHA regulations. *Goucher*, 104 Wn.2d at 672. This furthers the purpose of WISHA to assure safe and healthy working conditions for every person working in Washington. *Goucher*, 104 Wn.2d at 673, citing RCW 49.17.010.[1] Thus, the specific duty clause of RCW 49.17-.060(2), requiring employers to comply with applicable WISHA regulations, applies to employees of subcontractors.

The language of the statute supports this difference in the beneficiaries of the duty. Subsection (1) uses the term "his employees", while subsection (2) refers only to employees. WAC 296-155-040 subsections (1) and (2) contain the same distinction.

Petitioner contends that the interpretation of the statutory duty made by the Commissioner in reliance on *Straw v. Esteem Constr. Co.*, 45 Wn. App. 869, 728 P.2d 1052 (1986), conflicts with this Court's holdings in *Adkins vi Aluminum Co. of Am., supra,* and *Goucher v. J.R. Simplot Co., supra,* and another Court of Appeals decision, *Ward v. Ceco Corp.*, 40 Wn. App. 619, 699 P.2d 814, *review denied,* 104 Wn.2d 1004 (1985).

---

[1] RCW 49.17.010 states:

"The legislature finds that personal injuries and illnesses arising out of conditions of employment impose a substantial burden upon employers and employees in terms of lost production, wage loss, medical expenses, and payment of benefits under the industrial insurance act. Therefore, in the public interest for the welfare of the people of the state of Washington and in order to assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington, the legislature in the exercise of its police power, and in keeping with the mandates of Article II, section 35 of the state Constitution, declares its purpose by the provisions of this chapter to create, maintain, continue, and enhance the industrial safety and health program of the state, which program shall equal or exceed the standards prescribed by the Occupational Safety and Health Act of 1970 (Public Law 91-596, 84 Stat. 1590)."

In *Ward v. Ceco Corp., supra,* Division One of the Court of Appeals interpreted WAC 296–155–040(1) as a duty to provide a safe place of employment only with respect to the employees of each employer, and WAC 296–155–040(2) as a duty to install safety devices required by the regulations for the safety of employees generally. *Ward,* 40 Wn. App. at 624. In this case, the employer had created the situation that caused the injury. Therefore, it had a nondelegable duty to install safety equipment.

The *Ward* interpretation of WAC 296–155–040 was rejected by Division Three of the Court of Appeals. *Straw,* 45 Wn. App. at 873. The court felt that when construed as a whole, the two subsections both apply only to an employer's own employees. *Straw,* 45 Wn. App. at 874. Division Three concluded, therefore, that the general contractor had no nondelegable duty to furnish safety devices to employees of subcontractors.

In deciding P.B.M.C.'s motion, the Commissioner determined that P.B.M.C. owed Mr. Stute no duty. Stute argued that P.B.M.C. violated a statutory duty by failing to comply with regulations promulgated under WISHA which require scaffolding or other safety equipment. The Commissioner recognized that RCW 49.17.060 creates a general duty running only to the employers' own employees and a specific duty that runs to all employees on the jobsite. He then ignored the specific duty and found that WAC 296–155–040 imposes a duty on employers only with respect to the employer's own employees. The Commissioner based this finding on *Straw v. Esteem Constr. Co., supra* at 873–74. Accordingly, he held that P.B.M.C. had no statutory duty to Stute because Stute was not an employee of P.B.M.C. Although decided after *Goucher,* the Court of Appeals in *Straw* did not mention the Supreme Court case.

*Adkins* and *Goucher* discuss only RCW 49.17.060. *Ward* and *Straw* interpret WAC 296–155–040. The statute and regulation, however, mirror one another. Subsections (1) of both provisions are identical and the mandate of RCW 49.17.060(2) is put into effect by WAC 296–155–040(2). It is

incongruous to say that WISHA imposes both a general and a specific duty, but that the regulations effectuate only the general duty. The most logical reading of the statute and the regulation is that subsection (1) of each contains the general duty and subsection (2) of each contains the specific duty.

*Goucher* makes this clear when it states, "WISHA regulations should be construed to protect not only an employer's own employees, but *all* employees who may be harmed by the employer's violation of the regulations." 104 Wn.2d at 672. Thus, *Straw* and the Commissioner conflict with this court's holdings that the WISHA regulations apply to employees of independent contractors as well as direct employees of an employer. Employers must comply with the WISHA regulations to protect not only their direct employees but all employees on the jobsite.

## II

Even if Stute is within the class of persons protected by the statute, P.B.M.C. argues that before an employer has a duty to take particular safety measures under WISHA, it must control the work of the subcontractor.

The concept of control comes from the common law exception to nonliability of an employer to independent contractors. At common law, one who hires an independent contractor is not generally liable for injuries to employees of the independent contractor. *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978). An exception is where the employer retains control over some part of the work. *Kelley*, 90 Wn.2d at 330. In such a case, a duty of care arises. The question is the amount of control necessary to give rise to a duty. The Commissioner found that the evidence Stute submitted to prove control amounted to mere supervisory authority and thus, P.B.M.C. had no duty. Neither was there found to be any express contractual assumption of responsibility for safety on the part of P.B.M.C.

Washington courts recognized this element of control in pre–WISHA cases. In *Kelley v. Howard S. Wright Constr. Co., supra,* we found that a general contractor has a duty, within the scope of its control over the work, to provide a safe place to work for all employees. 90 Wn.2d at 330. The test of control is the right to exercise control and not the actual exercise of control. *Kelley,* at 330–31. In *Kelley,* general supervisory functions were sufficient to establish control over the work conditions of the subcontractor's employee. 90 Wn.2d at 331.

P.B.M.C.'s reliance on *Ward v. Ceco Corp., supra,* is misplaced. In *Ward,* the injured party was an employee of the general contractor, and he was attempting to hold a subcontractor liable for his injuries. Since subcontractors lack the supervisory authority of a general contractor, the injured party must prove the subcontractor was in control of or created the dangerous condition in order to hold the subcontractor liable.

Regarding the duty of a general contractor, in *Kelley* we approved of the approach taken by the Michigan Supreme Court in *Funk v. General Motors Corp.,* 392 Mich. 91, 220 N.W.2d 641 (1974). "Recognizing the authority a general contractor has to influence work conditions on a construction site, the Michigan Supreme Court has moved forthrightly to place ultimate responsibility for job safety in all common work areas on the general contractor." *Kelley,* 90 Wn.2d at 331. The Michigan Court determined that the best way to assure that safety precautions are taken is to make the general contractor responsible. *Kelley,* 90 Wn.2d at 331. The Michigan Supreme Court stated:

> The policy behind the law of torts is more than compensation of victims. It seeks also to encourage implementation of reasonable safeguards against risks of injury.
> Placing ultimate responsibility on the general contractor for job safety in common work areas will, from a practical, economic standpoint, render it more likely that the various subcontractors being supervised by the general contractor will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas.

*Funk,* 392 Mich. at 104. Although *Funk* was effectively overruled by *Hardy v. Monsanto Enviro–Chem Sys., Inc.,* 414 Mich. 29, 323 N.W.2d 270 (1982), on the issue of contributory negligence, its reasoning with respect to the duty of general contractors is still sound and accepted.

The Montana Supreme Court relied on *Funk,* as well as our decision in *Kelley,* in holding that if the general contractor has control over the property on which the work is being performed and the working conditions, the general contractor has the duty to ensure the safety of the jobsite for employees of subcontractors. *Shannon v. Howard S. Wright Constr. Co.,* 181 Mont. 269, 593 P.2d 438 (1979). Since as a practical matter, the general contractor must have control over the property and working conditions, the general contractor will have the duty to provide for safety.

California has also placed the duty on the general contractor as a matter of policy. In *Alber v. Owens,* 66 Cal. 2d 790, 427 P.2d 781, 59 Cal. Rptr. 117 (1967), the California Supreme Court strove to attain the goals of the Legislature "to impose responsibility for safety requirements on those who have the greater practical opportunity and ability to insure compliance with safety standards and to allow the protected class of workmen, injured by a failure to comply, to recover their damages from the responsible parties." 66 Cal. 2d at 796–97. Accordingly, the court found that, although each of the subcontractors fit the statutory definition of employer for purposes of implementing safety standards, as a practical matter, the general contractor is in the best position to coordinate work or provide expensive safety features to protect employees of subcontractors.

■ This is precisely the situation in the present case. S&S Gutters, Mr. Stute's direct employer, fits the statutory definition of employer as does P.B.M.C. *See* RCW 49.17-.020(3).[2] All employers are charged with the duty to comply

___

[2]RCW 49.17.020(3) states:

"(3) The term 'employer' means any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any

with the regulations. P.B.M.C. contends, therefore, that the subcontractor had the duty, not the general contractor. Yet, P.B.M.C.'s construction supervisor recognized that the subcontractor was not economically in a position to install safety devices such as scaffolding.

Inasmuch as both the general contractor and subcontractor come within the statutory definition of employer, the primary employer, the general contractor, has, as a matter of policy, the duty to comply with or ensure compliance with WISHA and its regulations. A general contractor's supervisory authority places the general in the best position to ensure compliance with safety regulations. For this reason, the prime responsibility for safety of all workers should rest on the general contractor.

The rationale of the Michigan Supreme Court in *Funk,* the Montana and California cases, and *Kelley* remain persuasive. In addition, a federal circuit court decision, *Marshall v. Knutson Constr. Co.,* 566 F.2d 596 (8th Cir. 1977), is in point. The Eighth Circuit Court of Appeals in *Marshall* stated, "General contractors normally have the responsibility and the means to assure that other contractors fulfill their obligations with respect to employee safety where those obligations affect the construction worksite." 566 F.2d at 599.

In Washington prior to the adoption of WISHA, the court held that RCW 49.16.030 (WISHA's predecessor) created a nondelegable duty on general contractors to provide a safe place to work for employees of subcontractors. *Kelley,* 90 Wn.2d at 333; *see also Jones v. Robert E. Bayley Constr. Co.,* 36 Wn. App. 357, 674 P.2d 679 (general contractor had nondelegable duty to provide a reasonably safe

business, industry, profession, or activity in this state and employs one or more employees or who contracts with one or more persons, the essence of which is the personal labor of such person or persons and includes the state, counties, cities, and all municipal corporations, public corporations, political subdivisions of the state, and charitable organizations: *Provided,* That any person, partnership, or business entity not having employees, and who is covered by the industrial insurance act shall be considered both an employer and an employee."

workplace for subcontractor's employees), *overruled on other grounds in Brown v. Prime Constr. Co.,* 102 Wn.2d 235, 240, 684 P.2d 73 (1984). The policy reasons behind the court's holdings have not changed and give added force to the language of WISHA.

Thus, to further the purposes of WISHA to assure safe and healthful working conditions for every person working in Washington, RCW 49.17.010, we hold the general contractor should bear the primary responsibility for compliance with safety regulations because the general contractor's innate supervisory authority constitutes sufficient control over the workplace.

## III

The Court of Appeals in *Straw* held that WAC 296–155–040(2) does not impose a statutory duty on a general contractor to comply with WISHA regulations for the benefit of employees of independent contractors. We cannot agree with this interpretation of the law with respect to the statute and regulations.

The Commissioner's ruling accepted the premise of *Straw.* The Commissioner held that since Stute was not an employee of P.B.M.C., the general contractor had no duty to him to comply with WISHA. This aspect of the Commissioner's ruling is contrary to decisions of this court and the Court of Appeals.

A general contractor's supervisory authority is per se control over the workplace, and the duty is placed upon the general contractor as a matter of law. It is the general contractor's responsibility to furnish safety equipment or to contractually require subcontractors to furnish adequate safety equipment relevant to their responsibilities.

We reverse the Commissioner's ruling, and remand the case to the trial court for a determination of damages.

CALLOW, C.J., BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., and CONE, J. Pro Tem., concur.