IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MT. SI CONSTRUCTION, INC., and CONTRACTORS BONDING AND INSURANCE COMPANY, | ) ) ) ) | No. 70568-7-I |
| | ) | DIVISION ONE |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| NICHOLAS AND KELLY UHRICH, and the marital community thereof, | ) ) ) | |
| Appellants. | ) ) | FILED: August 25, 2014 |

SCHINDLER, J. — Nicholas Uhrich appeals summary judgment dismissal of his personal injury lawsuit against general contractor Mt. Si Construction Inc. Uhrich contends Mt. Si had a duty to ensure he was using fall protection equipment while working on the roof under former WAC 296-155-24510 (2000) and former WAC 296-155-24515 (2000). Mt. Si argues neither former WAC 296-155-24510 nor former WAC 296-155-24515 apply because the scope of work did not expose Uhrich to the hazard of falling. Mt. Si also contends that fall protection was not required by an exception under former WAC 296-155-24515(2)(a) because Uhrich was on the roof "only to inspect, investigate, or estimate roof level conditions." Because there are genuine issues of material fact as to whether the scope of work exposed Uhrich to the hazard of falling, we reverse and remand for trial.

FACTS

Mt. Si Construction Inc. was the general contractor for a remodeling project. David Arnold, the president of Mt. Si, testified that "[a]s part of the remodeling work, it was necessary to locate the electrical wires just underneath the surface of the roof so that when the new roof surface was applied the roofers would not nail into the electrical wires." Mt. Si hired subcontractor Lander Electrical Services (LES) "to come locate the wire paths and mark their locations on the roof."

LES electrician Nicholas Uhrich arrived at the house at around 9:00 a.m. on November 3, 2009. Arnold took Uhrich up the "set of stairs on the outside of the addition we'd done . . . , in through what was to be a set of French doors . . . into the master bedroom." Arnold testified that he and Uhrich then walked "down the hallway and the living room" so that he could show Uhrich "the light and the switch locations that we needed to mark out in the roof." Arnold said that Uhrich "took out his sending device and attached it to a light switch at one of the locations" before returning to the master bedroom. Arnold testified that he then "set up a ladder in a skylight that—we'd just built a skylight that's a pitched skylight, there was no glass on it yet and it was right in the middle of a master bedroom addition to be done, and we went up through that [opening] and got onto the roof." The roof is flat with a 2-1/2-foot-wide gutter along the perimeter. At its highest point, the roof is 17-1/2 feet from the ground.

Arnold testified that earlier that morning, he had "gone up with a bucket of paint, and . . . marked the lights and the switch locations on top of the roof with paint." Arnold said that he showed Uhrich the light and switch locations he had marked on the roof

2

before "somebody called," and he left. Uhrich was not wearing fall protection equipment and there was no warning line system around the perimeter of the roof. Shortly after Uhrich started working, he fell off the roof. Uhrich sustained serious injuries, including a traumatic brain injury.

Uhrich and his spouse Kelly Uhrich (Uhrich) filed a personal injury lawsuit against Mt. Si. Uhrich alleged Mt. Si breached its duty to provide a safe work environment by allowing him to work on the roof without providing fall protection as required under former WAC 296-155-24510 and failing to have "a written fall protection work plan" as required under former WAC 296-155-24515. Mt. Si filed an answer denying liability and asserting Uhrich's negligence barred or reduced "any recovery."

Mt. Si filed a motion for summary judgment dismissal. Mt. Si argued that because the scope of work did not expose Uhrich to the hazard of falling, neither former WAC 296-155-24510 nor former WAC 296-155-24515 applied. Mt. Si also argued that fall protection was not required under the exception in former WAC 296-155-24515(2)(a) for a worker who is on a low-pitched roof only to "inspect, investigate, or estimate roof level conditions." Mt. Si also claimed it was entitled to judgment as a matter of law because Uhrich assumed the risk of falling from the roof.

Mt. Si submitted excerpts of the deposition testimony of Arnold and Uhrich, the declaration of Arnold, and the declaration of a painter at the work site, Jason Pontious. Arnold states that in his opinion, the "scope of work did not include getting anywhere near the edge of the roof or working in any area where there was a potential fall

3

hazard," and "[t]he closest light or switch location to the west side of the roof where Mr. Uhrich ultimately fell was 17' 6"."

In his declaration, Jason Pontious states that while he was painting the trellis on the west side of the house, he saw Uhrich "pacing around an area near the center of the roof. Mr. Uhrich was complaining to himself and tapping on a machine that he was holding in his hand." Pontious testified that Uhrich "was trying to locate the wires in the roof." Pontious states that he told Uhrich "the lights and switches were in a general area over the center of the roof," and "gestured towards some painted marks . . . on the roof showing the location of the switches and lights." Pontious testified that instead of walking over toward the painted marks, "Uhrich walked in the opposite direction to the west edge of the roof," and "leaned over . . . while commenting that he was just going to peek over the edge of the roof and take a look." Pontious said he saw Uhrich "crouch down into a 3-point stance," and as he started to fall, Pontious tried to reach out "to try to grab him. . . . This all happened very quickly. Mr. Uhrich went up to the gutter, leaned over the edge of the roof, started to place his hand on the decorative trellis and fell right off the roof in one continuous motion."

In the excerpts from the deposition submitted by Mt. Si, Uhrich states that he has no memory of the fall and cannot remember why he walked over to the edge of the roof. Uhrich testified that he was familiar with fall protection gear and he understood "that if you get too close to the edge of the roof there's a potential of falling." Uhrich also described how he traces electrical wires and the equipment he uses.

Uhrich filed a cross motion for partial summary judgment on breach of duty. Uhrich argued Mt. Si "breached its statutory duties by not providing a safe work environment, not having a written fall protection plan on the job site, by not furnishing such plan to the plaintiff, and by failing to ensure that the plaintiff was wearing fall protection gear."[1]

In support of the motion for partial summary judgment, Uhrich submitted Mt. Si's supplemental answers to interrogatories and requests for production and excerpts from Arnold's deposition. In answer to the interrogatories, Mt. Si admits Uhrich was an employee of the independent contractor it hired "to locate and mark the wiring paths between two light and switch locations on the roof."

During his deposition, Arnold testified that "[t]he biggest fall potential is right where Mr. Uhrich fell off the roof and that was—I believe I measured it at 17'6" to the ground from there." Arnold also admitted he did not have a fall protection plan on site and did not discuss safety or the use of fall protection equipment with Uhrich. Arnold said he was not familiar with the "safe place standards" adopted by the Department of Labor and Industries[2] and did not know if he was "currently following the directives from that act." Arnold testified that on the day of the accident, there were roofers working on the other side of the house insulating the addition Mt. Si had just built, and the roofers were using fall protection equipment.

The court denied Uhrich's motion for partial summary judgment, granted Mt. Si's motion for summary judgment, and dismissed the lawsuit.

---

[1] Emphasis omitted.
[2] WAC 296-155-040 describes the "safe place standards."

5

ANALYSIS

Uhrich argues the court erred in denying his motion for partial summary judgment and dismissing his personal injury lawsuit. Uhrich contends Mt. Si had a duty under former WAC 296-155-24510 and former WAC 296-155-24515 to ensure he was using fall protection equipment while working on the 17-1/2-foot-high roof. Mt. Si contends that because the scope of work did not expose Uhrich to the hazard of falling, neither former WAC 296-155-24510 nor former WAC 296-155-24515 applies. Mt. Si also claims a fall restraint or fall arrest system was not required, asserting the exception under former WAC 296-155-24515(2)(a) where a worker is on a low-pitched roof "only to inspect, investigate, or estimate roof level conditions" applies. In the alternative, Mt. Si contends that even if there were a duty under former WAC 296-155-24510 or former WAC 296-155-24515, it met that duty because fall protection gear was available for Uhrich to use.

This court reviews summary judgment de novo, engaging in the same inquiry as the trial court. Afoa v. Port of Seattle, 176 Wn.2d 460, 466, 296 P.3d 800 (2013). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. City of Sequim v. Malkasian, 157 Wn.2d 251, 261, 138 P.3d 943 (2006). In determining whether a genuine issue of material fact exists, we consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. Hearst Commc'ns, Inc. v. Seattle Times, 154 Wn.2d 493, 501, 115 P.3d 262 (2005). Where different competing

inferences may be drawn from the evidence, the issue must be resolved by the trier of fact. Johnson v. UBAR, LLC, 150 Wn. App. 533, 537, 210 P.3d 1021 (2009).

In a negligence action, a plaintiff must prove (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996). The existence of a legal duty is generally a question of law. Snyder v. Med. Serv. Corp. of E. Wash., 145 Wn.2d 233, 243, 35 P.3d 1158 (2001). But where the existence of a legal duty depends on disputed material facts, summary judgment is inappropriate. Afoa, 176 Wn.2d at 466.

The Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, governs safety standards for employers. The purpose of WISHA is to supplement the federal Occupational Safety and Health Act of 1970 (OSHA) and "assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington." RCW 49.17.010; Afoa, 176 Wn.2d at 470. "OSHA requires states to comply with its rules or else enact safe workplace standards at least as effective as OSHA in ensuring worker safety." Afoa, 176 Wn.2d at 470. Under WISHA, the Department of Labor and Industries must promulgate regulations that equal or exceed the OSHA standards. RCW 49.17.010, .040. As a remedial statute, WISHA and its regulations are liberally construed to carry out its stated purpose. Adkins v. Aluminum Co. of Am., 110 Wn.2d 128, 146, 750 P.2d 1257, 756 P.2d 142 (1988). "[R]egulations promulgated pursuant to WISHA . . . must also be construed in light of WISHA's stated purpose." Adkins, 110 Wn.2d at 146.[3]

---

[3] Footnote omitted.

RCW 49.17.060 and WAC 296-155-040 impose a nondelegable duty on employers to comply with WISHA. RCW 49.17.060 states, in pertinent part:

Each employer:
(1) Shall furnish to each of his or her employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his or her employees . . . ; and
(2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

The WAC regulation mirrors RCW 49.17.060. WAC 296-155-040 provides, in part:

(1) Each employer shall furnish to each employee a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to employees.
(2) Every employer shall require safety devices, furnish safeguards, and shall adopt and use practices, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do everything reasonably necessary to protect the life and safety of employees.

In Stute v. P.B.M.C., Inc., 114 Wn.2d 454, 788 P.2d 545 (1990), the Washington Supreme Court held that a general contractor has a nondelegable duty to ensure compliance with safety regulations for the protection of all employees at the work site, including the employees of a subcontractor. Stute, 114 Wn.2d at 464. The court concluded that the general contractor assumes primary responsibility because its "innate supervisory authority constitutes sufficient control over the workplace." Stute, 114 Wn.2d at 464. The court explained that the policy rationale for placing this responsibility upon a general contractor is because the "general contractor's supervisory authority places the general in the best position to ensure compliance with safety regulations." Stute, 114 Wn.2d at 463.

8

WISHA requires contractors ensure workers use specific fall protection equipment when the work presents a hazard of falling 10 feet or more. The WISHA fall protection requirements apply to workers "in construction, alteration, repair, maintenance (including painting and decorating), demolition workplaces, and material handling covered under chapter 296-155 WAC." Former WAC 296-155-24501 (2000).

Former WAC 296-155-24510 provides, in pertinent part:

When employees are exposed to a hazard of falling from a location ten feet or more in height, the employer shall ensure that fall restraint, fall arrest systems or positioning device systems are provided, installed, and implemented according to the following requirements.[4]

Former WAC 296-155-24515 is a more specific standard that applies to work on low-pitched roofs "with a potential fall hazard greater than ten feet."[5] Former WAC 296-155-24515 requires contractors ensure employees use a fall restraint or fall arrest system, or erect a warning line system. Former WAC 296-155-24515 provides, in pertinent part:

(1) General Provisions. During the performance of work on low pitched roofs with a potential fall hazard greater than ten feet, the employer shall ensure that employees engaged in such work be protected from falling from all unprotected sides and edges of the roof as follows:
    (a) By the use of a fall restraint or fall arrest systems, as defined in WAC 296-155-24510; or
    (b) By the use of a warning line system erected and maintained as provided in subsection (3) of this section and supplemented for

---

[4] Former WAC 296-155-24510(1)-(3) outlines the requirements for each of the three alternative forms of fall protection. Fall restraint systems include guardrails, safety belts or harnesses, warning lines, and safety monitors; fall arrest systems include full body harnesses, safety nets, and catch platforms; and positioning device systems include a body belt or harness system rigged so that an employee cannot free fall more than two feet and must be secured to appropriate anchorages. Former WAC 296-155-24510(1)-(3).

[5] "Low pitched roofs" are defined as roofs "having a slope equal to or less than four in twelve." WAC 296-155-24603.

employees working between the warning line and the roof edge by the use of a safety monitor system as described in WAC 296-155-24521.

Uhrich argues Mt. Si had a duty to ensure use of fall protection equipment under former WAC 296-155-24510 and former WAC 296-155-24515 because he was exposed to the hazard of falling from a 17-1/2-foot-high roof. Mt. Si relies on Arnold's testimony to argue the undisputed facts establish Uhrich was not exposed to the hazard of falling because the scope of work did not require him to go near the edge of the roof.

WAC 296-155-012 defines "hazard" to mean a "condition, potential or inherent, which is likely to cause injury, death, or occupational disease." A worker is exposed to a hazard in violation of WISHA where the worker has "access to the violative conditions." Adkins, 110 Wn.2d at 147. There must be a "reasonable predictability that, in the course of [the workers'] duties, employees will be, are, or have been in the zone of danger." Adkins, 110 Wn.2d at 147; see also Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus., 136 Wn. App. 1, 7, 146 P.3d 1212 (2006) (holding WISHA regulations were violated because the employee was working within close proximity to the hazard).

Viewing the evidence in the light most favorable to Uhrich, we conclude there are material issues of fact as to whether the scope of work exposed Uhrich to the hazard of falling and, therefore, whether former WAC 296-155-24510 or former WAC 296-155-24515 apply. Arnold testified that before Uhrich arrived, he "marked on the roof with paint the location of all the lights and switches from the main floor below," and "[m]ost of the switch and light locations were towards the center of the roof." But Arnold stated that on November 3, he told Uhrich to "trace the wire paths between the switch and light locations that were marked on the roof, and then to mark those paths with the paint I

had supplied." Arnold concedes in his deposition that he did not say anything to Uhrich "about not being near the edge of the house." Further, nothing in the record shows that the wiring ran in a straight line between the light and switch locations Arnold had previously marked with paint on the roof. Uhrich testified that he had to go up and down from the roof in order to locate and trace each line. In his deposition, Uhrich explained that he had to attach one part of the circuit tracer to the circuit inside the house, then return to the roof and use the hand-held receiver to locate the electrical wire.[6] Pontious also testified Uhrich appeared to have difficulty locating the electrical wires, "pacing around an area near the center of the roof . . . complaining to himself and tapping on a machine that he was holding in his hand."

In the alternative, Mt. Si claims that the exception under former WAC 296-155-24515(2)(a) applies. Former WAC 296-155-24515 states, in pertinent part:

> (2) Exceptions.
> (a) The provisions of subsection (1)(a) of this section do not apply at points of access such as stairways, ladders, and ramps, or when employees are on the roof only to inspect, investigate, or estimate roof level conditions. Roof edge materials handling areas and materials storage areas shall be guarded as provided in subsection (4) of this section.[7]

Preliminarily, Mt. Si argues that Uhrich may not for the first time on appeal rely on RCW 49.17.010 and the OSHA regulations to interpret the exception under former WAC 296-155-24515(2)(a). We disagree. "[A] statute not addressed below but pertinent to

---

[6] The part of the circuit tracer attached to the circuit inside the house emits a radio frequency that the hand-held receiver picks up.

[7] Emphasis added.

11

the substantive issues which were raised below may be considered for the first time on appeal." Bennett v. Hardy, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990).

RCW 49.17.010 specifically incorporates OSHA, expressly stating that the regulations promulgated under WISHA "shall equal or exceed the standards prescribed by [OSHA]." Accordingly, in construing WISHA regulations, we can look to OSHA regulations and the federal decisions interpreting OSHA. Adkins, 110 Wn.2d at 147.

The OSHA regulation for fall protection in construction workplaces has a similar exception to former WAC 296-155-24515(2)(a), providing, in pertinent part:

> The provisions of this subpart do not apply when employees are making an inspection, investigation, or assessment of workplace conditions prior to the actual start of construction work or after all construction work has been completed.

29 C.F.R. § 1926.500(a)(1).[8]

The OSHA exception applies only to workers engaged in "inspecting, investigating and assessing workplace conditions before the actual work begins or after work has been completed" because workers "are exposed to fall hazards for very short durations, if at all, since they most likely will be able to accomplish their work without going near the danger zone." Safety Standards for Fall Protection in the Construction Industry, 59 Fed. Reg. 40,672-01 (Aug. 9, 1994).[9] In addition, the OSHA regulations state, in pertinent part:

> [E]mployees who inspect, investigate or assess workplace conditions will be more aware of their proximity to an unprotected edge than, for example, a roofer who is moving backwards while operating a felt laying

---

[8] Emphasis added.

[9] Emphasis added.

machine, or a plumber whose attention is on overhead pipe and not on the floor edge.

59 Fed. Reg. 40,672-01. Accordingly, the exception does not apply "if inspections are made while construction operations are underway," in which case "all employees who are exposed to fall hazards while performing these operations must be protected." 59 Fed. Reg. 40,672-01.

Construction on the remodeling project was already underway when Uhrich was on the roof. There is no dispute that Uhrich was on the roof to locate and mark the locations for the electrical wiring underneath the surface of the roof. Uhrich was not on the roof "only to inspect, investigate, or estimate roof level conditions."[10]

Mt. Si also argues that even if it had a duty to provide fall protection equipment, the record shows it met that duty. Mt. Si relies on Uhrich's admission that he had fall protection gear in his van and Arnold's testimony that lanyards and safety harnesses were available for use at the project site. We reject Mt. Si's argument.

In Washington Cedar & Supply Co. v. Department of Labor & Industries, 137 Wn. App. 592, 154 P.3d 287 (2007), we held that former WAC 296-155-24510 "imposes three mandatory duties on employers." Wash. Cedar, 137 Wn. App. at 600. The employer must make certain that a fall system is provided, installed, and implemented. Wash. Cedar, 137 Wn. App. at 601. And former WAC 296-155-24515 explicitly requires

---

[10] (Emphasis added.) We note that even if the exception in former WAC 296-155-24515(2)(a) applies, there is no dispute that Mt. Si failed to provide a warning line system as required under former WAC 296-155-24515(1)(b).

the employer "ensure" the worker is using fall protection equipment or erect a warning line system.[11]

Because there are genuine issues of material fact as to whether the scope of work exposed Uhrich to the hazard of falling and whether Mt. Si breached the duty to ensure Uhrich used fall protection equipment, we reverse and remand for trial.

WE CONCUR:

---

[11] We also reject Mt. Si's argument that Uhrich's assumption of the risk of falling off the roof bars his recovery. For assumption of the risk to be a complete bar to recovery, the plaintiff must consent "to relieve defendant of a duty to plaintiff regarding specific known and appreciated risks." Scott v. Pac. W. Mountain Resort, 119 Wn.2d 484, 497, 834 P.2d 6 (1992). Because a general contractor has a nondelegable duty to comply with WISHA regulations, assumption of risk is not a complete bar to recovery. Whether Uhrich was contributorily negligent is a question for the trier of fact. See Scott, 119 Wn.2d at 503.