[No. 40161-1-I.    Division One.    February 1, 1999.]
RICHENDA SHINGLEDECKER, *Individually and as Personal Representative, Appellant*, v. ROOFMASTER PRODUCTS COMPANY, ET AL., *Defendants*, RR REDMOND, INC., *Respondent.*

*Melton L. Crawford* and *Harold H. Green* of *MacDonald, Hoague & Bayless*, for appellant.

*Donald C. Harrison* of *Safeco Ins. Co.*, for respondent.

GROSSE, J. — RR Redmond, Inc., d/b/a Redmond Roofing (Redmond Roofing), owed no duty to Bradley C. Shingledecker the employee of a supplier or materialman who was electrocuted after delivering roofing supplies to a home Redmond Roofing was about to reroof. Redmond Roofing did not choose the means or manner, or execute any control over how the supplier, Washington Cedar & Supply Co., Inc. (Washington Cedar), delivered the materials to a job-site where no work had yet been undertaken. Therefore, we affirm the decision of the trial court dismissing this wrongful death action.

A homeowner contacted Redmond Roofing about re-roofing her home in Kirkland. Redmond Roofing, a small roofing contractor, bid for and was awarded the job. Before beginning work on the reroofing project, Redmond Roofing contacted Washington Cedar, a roofing material supplier, and ordered composition shingles and other supplies to be delivered to the roof of the home, as is common practice in the industry.

Bradley Shingledecker and another Washington Cedar employee delivered the shingles to the home before any Redmond Roofing principals or employees were present

and before any work was undertaken. They delivered the shingles and other supplies in a roofing supply conveyor truck. Along the street in front of the home were power poles and lines. The conveyor truck parked in the driveway with its back end towards the home while the shingles were being delivered. There was an alley on the side of the home, but the Washington Cedar employees did not use that approach.

After completion of the delivery, Shingledecker's coworker attempted to return the conveyor to the truck by rotating it, but unfortunately moved the conveyor against a power line, and Shingledecker, who was standing on the ground beside the truck, was electrocuted.

Richenda Shingledecker, Bradley Shingledecker's widow and personal representative, brought a wrongful death action against Redmond Roofing and others, and claimed that Redmond Roofing breached a duty to comply with specific safety regulations promulgated under the Washington Industrial Safety and Health Act of 1973, RCW 49.17.910 (WISHA).

Redmond Roofing moved for and was granted summary judgment by the trial court which held that Redmond Roofing owed no duty to Shingledecker that would or could have prevented the injuries or death to him. Judgment was entered on January 28, 1997 and this appeal timely followed.[1]

Richenda Shingledecker contends that Redmond Roofing had a duty to Bradley Shingledecker to comply with WISHA regulations and provide a safe workplace as an employer and/or as the general contractor of the roofing project under

---

[1]This court reviews an order of summary judgment by engaging in the same inquiry as the trial court. *Failor's Pharmacy v. Department of Soc. & Health Servs.*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994); *Bozung v. Condominium Builders, Inc.*, 42 Wn. App. 442, 445, 711 P.2d 1090 (1985). We consider all the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party and determine whether reasonable persons could reach but one conclusion.

RCW 49.17.060(2),[2] as that statute has been construed in *Stute v. P.B.M.C., Inc.*,[3] and its progeny.[4] Mrs. Shingledecker claims that Redmond Roofing violated this duty and proximately caused her husband's death.

■■ RCW 49.17.060 creates a twofold duty. Subsection (1) imposes a general duty on employers to protect their *own* employees from recognized hazards not covered by specific safety regulations. Subsection (2) imposes a specific duty on employers to comply with WISHA regulations. Thus, an employer's liability depends on which section is invoked.[5] An employer's duty extends to the employees of independent contractors only when a party asserts that the employer did not follow particular WISHA regulations. In

[2]RCW 49.17.060 is the general safety standard and provides as follows:

Each employer:

(1) Shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees: PROVIDED, That no citation or order assessing a penalty shall be issued to any employer solely under the authority of this subsection except where no applicable rule or regulation has been adopted by the department covering the unsafe or unhealthful condition of employment at the work place; and

(2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

[3]*Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 788 P.2d 545 (1990).

[4]The cases that Mrs. Shingledecker relies upon, *Husfloen v. MTA Constr., Inc.*, 58 Wn. App. 686, 794 P.2d 859 (1990); *Weinert v. Bronco Nat'l Co.*, 58 Wn. App. 692, 795 P.2d 1167 (1990); *Rogers v. Irving*, 85 Wn. App. 455, 933 P.2d 1060 (1997); and *Smith v. Myers*, 90 Wn. App. 89, 950 P.2d 1018 (1998), are all distinguishable. These cases are either: (1) multi-employer cases where there is a general contractor or a primary subcontractor who has undertaken requisite retained control or direction of the work and, therefore, also has the duty to provide a safe workplace following commencement of the work, or (2) they are cases which turned on the fact that the owner/contractor was a private residential homeowner who is not included as an "employer" under WISHA.

[5]*See Stute*, 114 Wn.2d at 457. Here, Mrs. Shingledecker asserts violations of WAC 296-155-110 requiring establishment of an accident prevention program, and a walk-around safety inspection at the beginning of a job project; WAC 296--24-960 which requires a general contractor to insulate or de-energize live wires close enough for employee exposure to a hazard; and WAC 296-155-428 which is very similar to WAC 296-24-960 in its requirements. Contrary to Mrs. Shingledecker's claims, these regulations all reflect the general duty of an employer to its own employees.

such a case, all employees, including those of independent contractors, working on the premises are considered members of the protected class.[6]

Stated differently, WISHA, as well as case law, imposes on every employer a general duty to protect its own employees from recognized hazards not covered by specific safety regulations.[7] WISHA also imposes a duty to comply with specific WISHA regulations. This duty extends to the employees of independent contractors.[8] But, this duty to third parties is owed only by general contractors and owner/ developers with supervisory authority.[9]

As *Stute* sets forth, a general contractor has primary responsibility for ensuring compliance with WISHA regulations.[10] But that primary responsibility is based on the "general contractor's innate supervisory authority [which] constitutes sufficient control over the workplace."[11] In the context of this case, although Redmond Roofing was an employer in the State under the Act, it was not an employer

---

[6]*Stute*, 114 Wn.2d at 457 (citing *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 153, 750 P.2d 1257, 756 P.2d 142 (1988)).

[7]*Stute*, 114 Wn.2d at 457, 463; *Adkins*, 110 Wn.2d at 153; *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 672-73, 709 P.2d 774 (1985); RCW 49.17.060(1).

[8]*Stute*, 114 Wn.2d at 457; *Adkins*, 110 Wn.2d 153; *Goucher*, 104 Wn.2d at 672-73; RCW 49.17.060(2).

[9]*Phillips v. Kaiser Aluminum & Chem. Corp.*, 74 Wn. App. 741, 755, 875 P.2d 1228 (1994).

[10]*Stute*, 114 Wn.2d at 463.

[11]The Department of Labor and Industries, which is charged with the enforcement of WISHA issued WRD 93-4, a WISHA Regional Directive regarding contractor responsibility for safety and health under *Stute* and its early progeny. That directive defines a "general contractor."

A "General Contractor" is a contractor whose business operations require the use of any unrelated building trades or crafts whose work the contractor shall superintend or do in whole or in part. The terms "general contractor" and "builder" are synonymous. The term "general contractor" shall include a prime contractor, that is a contractor that has the prime or overall responsibility to superintend other general or subcontractors. Furthermore, for purposes of this WRD, an upper tier subcontractor may be deemed a "general contractor" for its contractors subordinate to it.

Thus, the Department of Labor and Industries incorporates the long-held policy of "innate supervisory authority" in defining general contractors, as well.

of Bradley Shingledecker or a general contractor exercising the requisite supervisory authority.

Here, contrary to Mrs. Shingledecker's contention, Washington Cedar's role in this project is not that of an independent contractor providing work to be supervised on the project. Washington Cedar was merely a supplier of goods and materials. However, even if Washington Cedar is considered an independent contractor, there is no basis for liability on the part of Redmond Roofing. Liability exists only where the employer of the independent contractor retains control over some part of the work.[12]

Redmond Roofing had no supervisory function or control over Washington Cedar or its employees. Redmond Roofing purchased the shingles and other supplies from Washington Cedar and asked that the supplies be delivered to the roof before work was to begin. Even if Redmond Roofing specified that the shingles be placed "on front below ridge," it did not direct how the company should get them there or have anyone at the site directing them as to how to deliver them. Redmond Roofing, as the buyer of goods, told Washington Cedar only when and where it wanted the goods delivered. The means by which the delivery was accomplished was entirely within Washington Cedar's discretion.

At the time of the accident, Redmond Roofing had not yet undertaken any actual reroofing work on the house. Simply because the roofer had a contract with the homeowner to reroof the house and ordered roofing supplies from Washington Cedar, it does not follow that the roofer has a status akin to that of a general contractor for purposes of finding a duty to third parties under WISHA. Redmond Roofing had not yet assumed any control of the premises or jobsite. Although Bradley Shingledecker may have been delivering materials to the place requested, he was not acting under the direction or control of Redmond

---

[12]*Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978).

Roofing. There was no workplace at the house for WISHA purposes at the time the shingles were delivered.

A duty to third party employees exists only within the scope of the employer's retained control. Here, Redmond Roofing had not retained control and did not involve itself in the delivery of the shingles and supplies. Redmond Roofing did not undertake responsibility for the safety of Washington Cedar's employees.[13]

The decision of the trial court is affirmed.

KENNEDY, C.J., and COLEMAN, J., concur.

Review denied at 138 Wn.2d 1018 (1999).

---

[13]*See Hennig v. Crosby Group, Inc.,* 116 Wn.2d 131, 134, 802 P.2d 790 (1991).