247 P.3d 482 (2011)
Brandon Apela AFOA, Appellant/Cross-Respondent,
v.
PORT OF SEATTLE, Respondent/Cross-Appellant.
No. 64545-5-I.
Court of Appeals of Washington, Division 1.
February 22, 2011.
*484 Raymond Everett Sean Bishop, Derek K. Moore, Bishop Law Offices PS, Normandy Park, WA, Michael T. Schein, Sullivan & Thoreson, Seattle, WA, for Appellant/Cross-Respondent.
Mark Steven Northcraft, Northcraft Bigby & Biggs PC, Seattle, WA, for Respondent/Cross-Appellant.
SPEARMAN, J.
¶ 1 In general, one who employs an independent contractor is not liable for injuries sustained by an independent contractor's employees. But a well established exception to the general rule is where an employer of an independent contractor retains control over some part of the work, in which case, the employer has a duty within the scope of that control to provide a safe place to work. At issue in this case is whether these same rules apply where the contract between the Port and appellant Brandon Afoa's employer is a "license agreement." We hold that they do and that questions of fact exist as to whether the Port retained sufficient supervisory authority over the manner in which Afoa performed his work. Accordingly, we reverse summary judgment and remand for further proceedings.

FACTS
¶ 2 Brandon Afoa was injured as a result of collision while he was operating a powered industrial vehicle on the airplane ramp at Seattle-Tacoma International Airport, which is owned and operated by the Port of Seattle. Mr. Afoa worked for Evergreen Aviation Ground Logistics Enterprises, Inc. ("EAGLE"). EAGLE provided "aircraft ground handling services" at the airport, including aircraft movement and loading and unloading aircraft cargo and baggage, under a "license agreement" with the Port. Afoa claims the brakes and steering on the vehicle failed while he was operating it, causing him to collide with a broken piece of equipment that had been left on the tarmac. The piece of equipment fell on him, crushing his spine and leaving him paraplegic. Afoa sued the Port, alleging it breached common law and statutory duties by failing to provide him with a safe workplace.
¶ 3 The Port moved for summary judgment, arguing that Afoa's suit was barred by the public duty doctrine, and that the Port did not owe any duty of care to the employees of EAGLE, because EAGLE was not an independent contractor with the Port and because the Port had no authority or control over EAGLE's work. The Port also argued that it owed no duty to Afoa under the Washington Industrial Safety and Health Act ("WISHA") because it is not an "employer," and Afoa is not an "employee" as those terms are defined in the statute. In addition, the Port sought sanctions against Afoa under CR 11. The trial court granted the motion for summary judgment, but denied the request for sanctions. Afoa appeals and the Port cross-appeals the denial of sanctions.

DISCUSSION

Standard of Review
¶ 4 When reviewing a motion for summary judgment, we engage in the same inquiry as the trial court. Marks v. Wash. Ins. Guar. Ass'n, 123 Wash.App. 274, 277, 94 P.3d 352 (2004). Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). "Like the trial court, we consider facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party." Marks, *485 123 Wash.App. at 277, 94 P.3d 352. Summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). The existence of a legal duty is generally a question of law. Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 48, 914 P.2d 728 (1996). But where duty depends on proof of certain facts that may be disputed, summary judgment is inappropriate. Sjogren v. Props. of the Pac. N.W., LLC, 118 Wash.App. 144, 148, 75 P.3d 592 (2003).

Common Law Duty
¶ 5 Afoa argues there are material questions of fact regarding whether the Port owed him a common law duty to provide a safe workplace in the same manner as a general contractor that has control over the way in which jobs are performed at a construction site. The Port contends that summary judgment was proper because its actions were strictly limited to ensuring compliance with what it refers to as a simple "license agreement" with Afoa's employer, EAGLE. We agree with Afoa for the reasons described herein.
¶ 6 In general, an employer who contracts with an independent contractor is not liable for injuries sustained by an independent contractor's employees. RESTATEMENT (SECOND) OF TORTS § 409 (1965); Kelley v. Howard S. Wright Constr. Co., 90 Wash.2d 323, 330, 582 P.2d 500 (1978); Stute v. P.B.M.C., Inc., 114 Wash.2d 454, 460, 788 P.2d 545 (1990). But where the employer retains control over some part of the independent contractor's work, the employer has a duty within the scope of that control to provide a safe place to work. Stute, 114 Wash.2d at 460, 788 P.2d 545; Kennedy v. Sea-Land Serv., Inc., 62 Wash.App. 839, 851, 816 P.2d 75 (1991); RESTATEMENT (SECOND) TORTS § 414 (1965). In Kamla v. Space Needle Corp., 147 Wash.2d 114, 119, 52 P.3d 472 (2002), the Supreme Court explained the rationale for holding employers who retain control over a jobsite liable for injuries incurred by employees of independent contractors:
Employers are not liable for injuries incurred by independent contractors because employers cannot control the manner in which the independent contractor works. Conversely, employers are liable for injuries incurred by employees precisely because the employer retains control over the manner in which the employee works.
Kamla, 147 Wash.2d at 119, 52 P.3d 472.
¶ 7 Regarding the issue of control, the test is not simply whether there is an actual exercise of control; rather, the test is whether the employer contracting with independent contractor retains a right to direct the manner in which the work is performed. Kamla, 147 Wash.2d at 121, 52 P.3d 472. Indeed, the right to control can exist even where the employer does not actually interfere with the independent contractor's work. Phillips v. Kaiser Aluminum & Chem. Corp., 74 Wash.App. 741, 750, 875 P.2d 1228 (1994). "Whether a right to control has been retained depends on the parties' contract, the parties' conduct, and other relevant factors." Id.
¶ 8 Washington courts have recognized a difference between merely overseeing contract compliance and becoming involved in the manner in which the contractual obligations are performed. For example, "`[t]he retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship.'" Hennig v. Crosby Group, Inc., 116 Wash.2d 131, 134, 802 P.2d 790 (1991) (quoting Epperly v. Seattle, 65 Wash.2d 777, 785, 399 P.2d 591 (1965)). Instead, an employer must have retained a right "to so involve oneself in the performance of the work as to undertake responsibility for the safety of the independent contractor's employees." Id. The RESTATEMENT (SECOND) TORTS § 414 (1965) cmt. c. is instructive on this issue:
It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not *486 mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.
¶ 9 In Kamla, the Space Needle hired an independent contractor to install a fireworks display on the Space Needle. Kamla, an employee of the independent contractor, was injured when his safety line snagged on a moving elevator and dragged him through the elevator shaft. Kamla, 147 Wash.2d at 118, 52 P.3d 472. He argued that the Space Needle was liable as a jobsite owner under the retained control exception. The Supreme Court disagreed, noting that the Space Needle did not assume responsibility for worker safety or retain the right to control or interfere with the manner in which the independent contractor and its employees set up the fireworks. Id. at 121-22, 52 P.3d 472. Instead, the Space Needle merely agreed to provide access to the display site, crowd control, firefighters, permit fees, technical assistance, security, and public relations. Id.
¶ 10 Similarly, in Hennig, the Supreme Court held that a contract authorizing the Port of Seattle to inspect an independent contractor's work to ensure contract compliance did not impose liability on the Port:
It is one thing to retain a right to oversee compliance with contract provisions and a different matter to so involve oneself in the performance of the work as to undertake responsibility for the safety of the independent contractor's employees.
Hennig, 116 Wash.2d at 134, 802 P.2d 790.
¶ 11 By contrast, in Kelley, the general contractor expressly assumed responsibility for "supervising and coordinating all aspects of the work" and "agreed to be responsible for `initiating, maintaining and supervising all safety precautions and programs in connection with the work[.]'" Kelley, 90 Wash.2d at 327, 582 P.2d 500. As such, the Supreme Court held that the exception applied and the general contractor's contractual duty of care to the employees of its subcontractors was nondelegable. Id. at 333-34, 582 P.2d 500. The Court thus affirmed the judgment against the general contractor.
¶ 12 Afoa argues this case is more like Kelley than Kamla or Hennig. We agree. The Port's argument that it owes no duty to Afoa because EAGLE is not an independent contractor with the Port and its contract with EAGLE is merely a "license agreement," misses the mark. Whether the agreement between the Port and EAGLE is called a "license agreement" or any other term is immaterial. Nor does it matter that the Port does not consider EAGLE to be an "independent contractor." The issue is whether the Port has a contractual relationship with EAGLE by which it retained control over the manner in which EAGLE provided ground services such as loading and unloading aircraft cargo and baggage and aircraft movement. The Port contends that it does not. But an examination of the agreement between EAGLE and the Port, when viewed in a light most favorable to Afoa, reveals questions of material fact on this issue.
¶ 13 The agreement provides that EAGLE "shall comply with all Port regulations including the Port's SCHEDULE OF RULES AND REGULATIONS FOR SEATTLE-TACOMA INTERNATIONAL AIRPORT. . . ." The Port's schedule includes a wide range of rules and regulations that appear to govern many details of EAGLE's operation of its own vehicles. For example, section 4 of the schedule includes the following provisions:
MOTOR VEHICLE OPERATIONS
A. GENERAL
. . .
7. No more than six (6) baggage or cargo carts will be towed by a single baggage tug or other vehicle at any one time and will not exceed fifteen (15) miles [24 km] per hour.
. . .
9. Operators of vehicles which, because of design/function, that restrict operator visibility to sides and rear of vehicle, shall utilize ground marshaller for guidance during backing operations *487 or when operating within restricted space areas.
. . .
B. IN-TERMINAL BUILDING
1. Any person operating equipment within the passenger terminal building will abide by all posted speed regulations in these areas and in any event not exceed five (5) miles [8 km] per hour.
2. Any person operating equipment prior to entering into or exiting from any tunnel area or other area where vision is impaired shall, within three (3) feet [1 meter] of any exit or obstruction, bring the equipment to a complete stop and sound the horn before entering the apron or adjoining area.
. . .
C. FIELD
1. All vehicular equipment in the Air Operations Area, cargo, tunnel, access road, aircraft parking, or storage areas must at all times comply with any lawful signal or direction of Port employees. All traffic signs, lights, and signals shall be obeyed, unless otherwise directed by Port employees.
. . .
8. No person shall operate any motor vehicle or motorized equipment on the aircraft movement or parking areas of the Airport at a speed in excess of twenty (20) miles [32 km] per hour, or less where conditions warrant. Designated motor vehicle drive lanes shall be utilized where provided unless specific authorization to the contrary is given by a Port employee.
. . .
10. Any vehicular equipment operating within the Air Operations Area must display signs of commercial design on both sides of the vehicle which identify the vehicle to the Airport tenant, construction firm, or vendor concerned. Firm names must appear in letters a minimum of two (2) inches [5 cm] high. In addition, any vendor's vehicle must display a current ramp permit issued by the Director [of Aviation of the Port of Seattle]. (See also Section 8, Enforcement, Security Violation Procedure subparagraph B.4.a(7).)
. . .
11. No person shall park any motor vehicle or other equipment or materials in the Air Operations Area of the Airport except in a neat and orderly manner and at such points as prescribed by the Director.
12. No person shall paint, repair, maintain, or overhaul any motor vehicle or other equipment or materials in the Air Operations Area of the Airport except in such areas and under such terms and conditions as prescribed by the Director.
¶ 14 Additionally, the regulations provide that EAGLE employees "shall comply with written or oral instructions issued by the Director or Port employees to enforce these regulations[,]" and that "the Director is empowered to issue such other instructions as may be deemed necessary for the safety and well-being of Airport users or otherwise in the best interests of the Port." Moreover, this comports with the declarations of Afoa and EAGLE ramp supervisor Toiva Gaoa, who both testified that the Port retained "exclusive control" over the area where Afoa was injured; that they were required to obey Port rules and personnel in the event of a conflict between Port and EAGLE directives; and that the Port required them to take a Port-administered driving test before being permitted to use the ramp area of the tarmac.
¶ 15 The Port disputes Afoa's evidence, claiming that it had nothing to do with training Afoa to operate his vehicle, and that it "does not employ, manage, or supervise EAGLE or any of its employees[.]" The Port contends its agreement with EAGLE and the Port rules and regulations merely require EAGLE employees to follow all applicable laws. The Port also points to language in its agreement with EAGLE indicating that EAGLE *488 is solely responsible for its own equipment, and that the Port "`accepts no liability for [EAGLE's] equipment.'" But at best, this is conflicting evidence, showing that genuine issues of material fact exist regarding whether the Port so involved itself in the performance of EAGLE's work as to undertake responsibility for the safety of EAGLE's employees. As such, we hold summary judgment was improper, and reverse.

Statutory Duty
¶ 16 Afoa also argues that the Port owed him a statutory duty under the WISHA. We agree. RCW 49.17.060(2)[1] imposes a nondelegable duty on all general contractors to ensure compliance with WISHA regulations. Kamla, 147 Wash.2d at 122, 52 P.3d 472 (citing Stute, 114 Wash.2d at 464, 788 P.2d 545). The Supreme Court in Stute imposed primary responsibility for compliance with WISHA regulations on the general contractor because its "innate supervisory authority constitutes sufficient control over the workplace." Stute, 114 Wash.2d at 464, 788 P.2d 545.
¶ 17 The rule set forth in Stute has been extended to other parties who are sufficiently analogous to justify imposing statutory liability. For example, in Weinert v. Bronco Nat'l Co., 58 Wash.App. 692, 795 P.2d 1167 (1990), this court held that the duty announced in Stute applied not only to general contractors, but also to jobsite owners who retain control or supervisory authority over the performance of a subcontractor's work:
We do not overlook the fact that Bronco is an owner/developer rather than a general contractor hired by an owner. We see no significance to this factor insofar as applying Stute to the facts of this case. The owner/developer's position is so comparable to that of the general contractor in Stute that the reasons for the holding in Stute apply here. The purpose of the statutes and regulations relied upon in Stute is to protect workers. The basis for imposing the duty to enforce those laws on a general contractor exists with respect to an owner/developer who, like the general contractor, has the same innate overall supervisory authority and is in the best position to enforce compliance with safety regulations.
Weinert, 58 Wash.App. at 696, 795 P.2d 1167. Likewise, in Doss v. ITT Rayonier, Inc., 60 Wash.App. 125, 803 P.2d 4 (1991), an employee of an independent contractor hired by ITT Rayonier was killed in an accident at the jobsite. The estate alleged that ITT Rayonier violated a specific WISHA provision. The court noted ITT Rayonier was a jobsite owner and not a general contractor, but found "no significant difference . . . between an owner-independent contractor relationship and a general contractor-subcontractor relationship." Doss, 60 Wash.App. at 127 n. 2, 803 P.2d 4.
¶ 18 By contrast, the Supreme Court in Kamla held that under the facts of that case, the Space Needle's relationship with an independent contractor who installed a fireworks display was not sufficiently analogous to that of a general and subcontractor to justify imposing a nondelegable duty to ensure WISHA compliance. Kamla, 147 Wash.2d at 123-24, 52 P.3d 472. The court reasoned that even though jobsite owners may have the authority to control jobsite work conditions, they may not have knowledge or expertise about WISHA regulations. Because such jobsite owners cannot instruct contractors on how to work safely, they may rely on their contractors to ensure WISHA compliance. Id. at 124-25, 52 P.3d 472. Accordingly, "[i]f a jobsite owner does not retain control over the manner in which an independent contractor completes its work, the jobsite owner does not have a duty under WISHA to `comply with the rules, regulations, and orders promulgated under [chapter 49.17 RCW].'" Id. at 125, 52 P.3d 472. For this reason, the Supreme Court held the Space Needle was not liable to the contractor's employee because it did not retain the right to control the manner in which the contractor and its employees accomplished their work. Id.; see also Neil v. NWCC Investments V. *489 LLC, 155 Wash.App. 119, 127, 229 P.3d 837, rev. denied, 169 Wash.2d 1018, 238 P.3d 502 (2010) (Stute's duty "does not extend to owners that do not retain the right to control the manner in which the independent contractor and its employees perform their work"). Kamla, 147 Wash.2d at 125, 52 P.3d 472.
¶ 19 Afoa argues that, as was the case with the businesses in Weinert and Doss, the Port's control and authority is sufficiently analogous to that of a general contractor to justify application of the Stute rule.[2] The Port responds that the Stute rule does not apply because it is not an "employer" and Afoa is not an "employee" as those terms are defined under WISHA. An "employer" is defined as:
any person ... or other business entity which engages in any business . . . in this state and employs one or more employees or who contracts with one or more persons, the essence of which is the personal labor of such person or persons[.]
RCW 49.17.020(4). The term "employee" means:
[A]n employee of an employer who is employed in the business of his employer whether by way of manual labor or otherwise and every person in this state who is engaged in the employment of or who is working under an independent contract the essence of which is his or her personal labor for an employer under this chapter whether by way of manual labor or otherwise.
RCW 49.17.020(5).
¶ 20 The gravamen of the Port's argument on this issue is that "neither Mr. Afoa, EAGLE, nor the air carriers were working under an independent contract with the Port the essence of which was their personal labor for the Port." But this is not required by the statute. Rather, WISHA requires only that an employer "engage[] in any business . . . in this state and employ[] one or more employees[.]" RCW 49.17.020(4). Likewise, WISHA merely requires that Afoa be "[a]n employee of an employer who is employed in the business of his or her employer whether by way of manual labor or otherwise[.]" RCW 49.17.020(5).[3]
¶ 21 More importantly, whether Stute is applied does not turn on an analysis of the definitions of "employer" and "employee" under WISHA. Instead, the question is whether the business entity retains such control or supervisory authority over the performance of a subcontractor's work as to be analogous to a general contractor. Weinert, 58 Wash. App. at 696, 795 P.2d 1167. If that is the case here, the Port has a nondelegable duty to ensure WISHA compliance for everyone employed at the work site. Id. Again, this determination is fact-based, and turns on factors such as whether the Port retained control over the manner in which EAGLE and its employees did their work, Kamla, 147 Wash.2d at 125, 52 P.3d 472; whether the Port had "the greater practical opportunity and ability to insure compliance with safety standards," Stute, 114 Wash.2d at 462, 788 P.2d 545; and whether the Port had "innate supervisory authority," Doss, 60 Wash.App. at 128, 803 P.2d 4.
¶ 22 As is described above, the evidence viewed in a light most favorable to Afoa shows that genuine issues of material fact exist regarding whether the Port retained such control or supervisory authority over the performance of EAGLE's work as to be analogous to a general contractor. As such, we hold summary judgment was improperly granted on this issue.

Duty to Business Invitee
¶ 23 Afoa also argues that the Port breached a duty of care it owed to him as a business invitee. "The legal duty owed by a landowner to a person entering the premises depends on whether the entrant falls under the common law category of a *490 trespasser, licensee, or invitee." Iwai v. State, 129 Wash.2d 84, 90-91, 915 P.2d 1089 (1996). With regard to an invitee, "[a] landowner is liable for harm caused by an open and obvious danger if the landowner should have anticipated the harm, despite the open and obvious nature of the danger." Kamla, 147 Wash.2d at 126, 52 P.3d 472. Here, Afoa provided an aerial photograph of the airport at the time of the accident purporting to show that the tarmac was cluttered with broken equipment. Although it is very difficult to make out any detail in the photograph, Afoa also testified that there was "a great amount of machinery cluttered in and around" the area where he had his accident, and that he was injured when he "collided with a broken piece of large machinery[.]"
¶ 24 The Port does not argue Afoa's evidence is insufficient to create a question of fact as to whether the Port breached a duty of care to a business invitee. Instead, the Port claims that Afoa was not a business invitee because it never "invited" him onto its property, and that Afoa was merely a licensee. According to the Port, therefore, it cannot be liable because Afoa knew or had reason to know of the clutter and the risk involved with the clutter. RESTATEMENT (SECOND) OF TORTS § 342 (1965). We reject this argument. To determine whether an entrant is a licensee or an invitee, "`[t]he ultimate goal is to differentiate (1) an entry made for a business or economic purpose that benefits both entrant and occupier, from (2) an entry made for a purpose that either (a) benefits only the entrant or (b) is primarily familial or social.'" Beebe v. Moses, 113 Wash.App. 464, 467-68, 54 P.3d 188 (2002) (quoting Thompson v. Katzer, 86 Wash.App. 280, 286, 936 P.2d 421 (1997)). Afoa was present on the Port's property for a business purpose that benefited both parties, and was therefore a business invitee.
¶ 25 Given the Port declined to provide any argument on whether Afoa's testimony created a question of fact regarding breach of a duty to a business invitee, Afoa's evidence is unopposed, and we reverse summary judgment on this issue.

Public Duty Doctrine
¶ 26 The Port contends Afoa's claims are barred by the public duty doctrine. We reject this argument. The public duty doctrine merely recognizes the lack of an actionable duty to provide good government; in other words, that "a duty to all is a duty to no one." J & B Dev. Co. v. King County, 100 Wash.2d 299, 303, 669 P.2d 468 (1983) (overruled on other grounds by Taylor v. Stevens County, 111 Wash.2d 159, 759 P.2d 447 (1988)). In Taylor, our Supreme Court described the public duty doctrine as follows:
Under the public duty doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that `the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general. . . .'
Taylor, 111 Wash.2d at 163, 759 P.2d 447 (quoting J & B Dev. Co., 100 Wash.2d at 303, 669 P.2d 468). Here, Afoa is not alleging a breach of a public duty, and as such the doctrine does not apply.

Sanctions
¶ 27 In its cross-appeal, the Port claims the trial court erred by declining to award sanctions against Afoa under CR 11, and it seeks fees and costs for what it contends is a frivolous appeal. Given our resolution of this appeal, we reject the Port's arguments as to sanctions.
¶ 28 Reversed and remanded for further proceedings consistent with this opinion.
WE CONCUR: J. ROBERT LEACH and LINDA LAU, JJ.
NOTES
[1] RCW 49.17.060(2) provides that each employer "[s]hall comply with the rules, regulations, and orders promulgated under this chapter."
[2] Afoa contends the Port violated a variety of regulations regarding inspection, maintenance, and training for the use of powered industrial trucks: WAC 296-863-20005, -20025, -30005, -30010, -20020, -60005, and -40010.
[3] The Port also claims the location where Afoa was injured was not a "`work place'" as is defined under WISHA. We reject this argument, however, because it rests on the Port's claim that it was not an employer and Afoa was not an employee.