# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JODY AUCOIN, individually and as personal representative of DUCAS AUCOIN; HOLLAND AUCOIN, and TELLIS AUCOIN, | No. 84921-2-I |
| | DIVISION ONE |
| Appellants, | PUBLISHED OPINION |
| v. | |
| C4DIGS, INC.; HOL-MAC CORPORATION d.b.a. DONKEY FORKLIFTS; LEONARDI LANDSCAPING, INC.; and JOHN DOES 1-5, | |
| Respondents. | |

FELDMAN, J. — We are asked in this appeal to determine whether a general contractor and a subcontractor may owe a duty in tort to a worker who was killed in an accident that occurred when the worker was delivering materials to a location adjacent to the acknowledged workplace.

The worker, Ducas Aucoin (referred to individually herein as Aucoin), was killed when his forklift rolled while he delivered pavers at a steeply sloped location adjacent to a construction site because the designated loading/unloading zone was inaccessible. Aucoin's estate and surviving family members (referred to collectively herein as the Aucoins) asserted negligence claims against C4Digs, the

general contractor on the project, and Leonardi Landscaping, the subcontractor that hired Aucoin's employer to deliver pavers to the site. The trial court ruled "as a matter of law, I don't believe that C4Digs or Leonardi owed a duty to Mr. Aucoin" and dismissed the Aucoins' claims against both defendants on summary judgment.

We reverse both rulings. As to C4Digs, we hold that it owed Aucoin a duty to provide a safe workplace (and comply with applicable worksite regulations) if it had or retained the right to control the manner of Aucoin's work when he delivered pavers to the construction site. Because there are genuine issues of material fact as to that question, we reverse the trial court's ruling deciding the issue as a matter of law in C4Digs's favor. As to Leonardi, we hold that it owed Aucoin a duty to exercise reasonable care in scheduling the delivery of pavers and similarly reverse the trial court's ruling deciding this issue in Leonardi's favor. We remand both claims for further proceedings.

I

In May of 2018, C4Digs, a general contractor, was finishing construction on a corner lot in Seattle. C4Digs had obtained a staging permit, which permitted it to block off and put "no parking" signs on 26th Avenue to create a loading/unloading zone. C4Digs's project manager claims that he had intercepted multiple workers attempting to make deliveries at an alternate location on East John Street, which is adjacent to the construction site and steeply sloped. When material suppliers attempted to deliver materials at the East John Street location, C4Digs's project manager redirected them to the 26th Avenue loading/unloading zone. The project manager testified that if the loading/unloading zone had cars in

it, he would have the owners move them or have the cars towed so the delivery could be made there.

In its capacity as general contractor, C4Digs subcontracted with Leonardi Landscaping for its landscaping needs, which would require multiple materials deliveries to the construction site. C4Digs claims it informed Leonardi verbally and via email that Leonardi needed to contact C4Digs when a delivery was on its way so C4Digs could be ready to facilitate the delivery. Before starting its own work, Leonardi subcontracted with SiteOne, Aucoin's employer, to deliver pavers to the construction site.

On May 14, Aucoin arrived at the construction site with the delivery of pavers. C4Digs had not been notified about the delivery, and the site's project manager had already left when Aucoin arrived. A touch-up painter (a subcontractor) had parked his car in the loading/unloading zone, which C4Digs permitted if there was no expected delivery. Because the loading/unloading zone was blocked, Aucoin attempted to unload the pavers on the steeply sloped East John Street. During this process, the forklift tipped and killed Aucoin.

The Aucoins subsequently filed this wrongful death suit, claiming C4Digs, Leonardi, and the forklift manufacturer, Hol-Mac, were negligent. Both C4Digs and Leonardi filed summary judgment motions seeking dismissal of the Aucoins' claims. Both defendants argued they did not owe Aucoin any duty to maintain a safe workplace because he unloaded the pavers at the East John location rather than the 26th Avenue loading/unloading zone. The trial court agreed, ruling:

> So as a matter of law, I don't believe that C4Digs or Leonardi
> owed a duty to Mr. Aucoin, and because he was delivering -- he was

delivering the pavers.

And moreover, the incident happened in an area that was not under the control of C4Digs, which is where the load/unload zone was.

Having so ruled, the court granted both C4Digs's and Leonardi's motions for summary judgment.

The Aucoins subsequently dismissed without prejudice their remaining claim against Hol-Mac and agreed to toll the statute of limitations so they could immediately appeal the trial court's summary judgment orders. Additionally, the trial court entered final judgment against the Aucoins under CR 54(b), stating "the Court finds that there is no just reason for delay and expressly directs that judgment be entered as to defendant C4Digs and Leonardi." This timely appeal followed.

II

The trial court dismissed the Aucoins' claims against C4Digs and Leonardi on summary judgment. We review an order granting summary judgment de novo. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). "Summary judgment is appropriate only 'when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Kim v. Lakeside Adult Family Home*, 185 Wn.2d 532, 547, 374 P.3d 121 (2016) (quoting *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)). "The moving party bears the burden of demonstrating there is no issue of material fact, and all facts and reasonable inferences therefrom must be viewed in the light most favorable to the

nonmoving party." *Id.* Also, whether a party owes a duty in tort to another party is a question of law. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994). We review questions of law, including duty, de novo. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 597, 257 P.3d 532 (2011). This court similarly interprets both statutes and regulations de novo. *Yaron v. Conley*, 17 Wn. App. 2d 815, 825, 488 P.3d 855 (2021).

III

The Aucoins argue that the trial court erred in granting summary judgment dismissing their negligence claim against C4Digs. We agree.

In its oral ruling granting C4Digs's motion for summary judgment, the trial court explained, "[T]he incident happened in an area that was not under the control of C4Digs, which is where the load/unload zone was." The trial court's ruling presents an issue of first impression, as no Washington court has previously held that a general contractor has a statutory or common law duty to provide a safe workplace (and comply with applicable work site regulations) where the accident at issue occurred at a location adjacent to an acknowledged workplace. To decide this issue, we must first determinate what test, if any, should govern the scope of a general contractor's duties to workers when an accident arguably occurs offsite.

We begin our analysis of this issue, in parts II(A) and (B) below, by describing these duties and corresponding policy rationales. As will be seen, the paramount consideration in recognizing these duties is that general contractors (and sometimes jobsite owners) have control over the work and are therefore best situated to ensure that safety precautions are in place and enforced. Because

there are genuine issues of material fact regarding whether C4Digs had or retained the right to control the manner of Aucoin's work when he delivered the pavers to the construction site, as part II(C) below shows, the trial court erred in deciding this issue as a matter of law in C4Digs's favor. Lastly, as part II(D) below shows, C4Digs's contrary arguments lack merit.[1]

A

The Aucoins allege that C4Digs had a statutory duty to Aucoin to provide a safe workplace. When interpreting a statute, the court's objective is to give effect to the legislature's intent. *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 405, 377 P.3d 199 (2016). We start with the plain meaning of the statute, considering the provision in the context of the broader statutory scheme. *Id.* The statute in question here, RCW 49.17.060, is a part of the Washington Industrial Safety and Health Act (WISHA). WISHA's stated purpose is to assure "safe and healthful working conditions for every man and woman working in the state of Washington." RCW 49.17.010. Since these statutes and regulations are remedial, they must be interpreted liberally to achieve their purpose. *Dep't of Labor & Indus. v. Tradesmen Int'l, LLC*, 198 Wn.2d 524, 534-35, 497 P.3d 353 (2021).

RCW 49.17.060 establishes an employer's duty to provide a safe workplace and comply with WISHA rules and regulations. It provides:

---

[1] C4Digs also claims "[t]his matter is not ripe for appeal" because the Aucoins' claims against Hol-Mac have not been dismissed with prejudice. Leonardi does not join this argument, and for good reason: our commissioner has already ruled that the appeal should proceed as a matter of right, and C4Digs did not seek modification. The commissioner's ruling is therefore a final decision of the court. *See Hough v. Ballard*, 108 Wn. App. 272, 277, 277 n.3, 31 P.3d 6 (2001) (rejecting argument that matter was not appealable where commissioner had already ruled that the matter was appealable as of right, explaining, "If an aggrieved party fails to seek modification of a commissioner's ruling within the time permitted by RAP 17.7, the ruling becomes a final decision of the court.").

Each employer:

   (1) Shall furnish to each of his or her employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his or her employees . . . and

   (2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

The liability imposed by these provisions "is expansive," and the duties they impose on general contractors are "nondelegable." *Morris v. Vaagen Bros. Lumber, Inc.*, 130 Wn. App. 243, 253, 125 P.3d 141 (2005).

Notably, the duty in subsection (1) is limited by the phrase "his or her employees" whereas subsection (2) omits that limitation. Under Washington law, it is an "elementary rule that where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." *United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 362, 687 P.2d 186 (1984). Here, the difference between subsections (1) and (2) demonstrates the legislature's intent for the duty of the employer to comply with WISHA rules not to be limited to the employer's own employees. *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 458, 788 P.2d 545 (1990) (holding that the duty clause in RCW 49.17.060(2) "is not confined to just the employer's own employees but applies to all employees who may be harmed by an employer's violation of the WISHA regulations").

WISHA also provides broad rulemaking authority to the Director of Labor and Industries. RCW 49.17.040 ("The director shall make, adopt, modify, and repeal rules and regulations governing safety and health standards for conditions

of employment as authorized by this chapter."). These regulations have "the force and effect of law." *Champagne v. Thurston County*, 163 Wn.2d 69, 80 n.9, 178 P.3d 936 (2008) (quoting *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 848, 50 P.3d 256 (2002)). Two such regulations, WAC 296-155-100(1)(a) and WAC 296-155-040(1), require an employer to provide a safe workplace. The first, WAC 296-155-100(1)(a), states:

> (1) It is the responsibility of management to establish, supervise, and enforce, in a manner which is effective in practice:
>
> (a) A safe and healthful working environment.

The second, WAC 296-155-040(1), similarly states:

> You must furnish to each employee a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to employees.

The language of WAC 296-155-040(1) is substantially similar to RCW 49.17.060(1) except it omits the statute's language that limits the duty to the employer's employees. Thus, under WISHA, employers have a statutory and regulatory duty, which applies beyond an employer's own employees, to furnish a safe workplace.

The seminal case articulating a general contractor's statutory duty to all employees at a workplace and the reasons supporting the rule is *Stute*. Stute, the employee of a subcontractor, was seriously injured when he slipped off a roof while installing gutters and there was no scaffolding or other safety equipment to break his fall. 114 Wn. 2d at 456. The general contractor on the project argued it had no duty to comply with WISHA regulations and furnish safety equipment for a subcontractor's employee. *Id.* Our Supreme Court squarely rejected that argument, holding, "the general contractor should bear the primary responsibility

for compliance with safety regulations because the general contractor's innate supervisory authority constitutes sufficient control over the workplace." *Id*. at 464. The court explained that this interpretation promoted the goals of the legislature "to impose responsibility for safety requirements on those who have the greater practical opportunity and ability to insure compliance with safety standards and to allow the protected class of [workers], injured by a failure to comply, to recover their damages from the responsible parties.'" *Id.* (quoting *Alber v. Owens*, 66 Cal.2d 790, 796-97, 59 Cal.Rptr 117, 427 P.2d 781 (1967)).[2]

Our Supreme Court reiterated these legal principles in subsequent cases, which also are instructive here. For example, in *Vargas v. Inland Washington, LLC*, 194 Wn.2d 720, 736-37, 452 P.3d 1205 (2019), the court relied on WAC 296-155-100, quoted above, in holding that the general contractor's duty to provide a safe workplace extended to *all employees* working onsite. Echoing the importance of control in *Stute*, the court explained that general contractors have this expansive duty to comply with WISHA because they have "'innate supervisory authority' and therefore also [have] 'per se control over the workplace.'" *Id.* at 736 (quoting *Stute*, 114 Wn.2d at 464). Similarly, in *Afoa v. Port of Seattle*, 176 Wn.2d 460, 482, 296 P.3d 800 (2013), the court explained that a job owner may have the same duty as

---

[2] The court in *Stute* distinguished between the scope of a general contractor's duty to provide a safe workplace under RCW 49.17.060(1) and the scope of its duty to comply with WISHA regulations under RCW 49.17.060(2) because, when the opinion was issued in 1990, both RCW 49.17.060(1) and WAC 296–155–040(1) limited an employer's duty to provide a safe workplace to "his employees" and did not similarly limit an employer's duty to comply with WISHA regulations. *See Stute*, 114 Wn.2d at 457 (referring to the resulting distinction as a "two-fold duty" and clarifying that "[t]he employer's duty only extends to employees of independent contractors when a party asserts that the employer did not follow particular WISHA regulations"). In 1994, WAC 296-155-040(1) was amended to extend an employer's duty to provide a safe workplace to "each employee." WAC 296-155-040(1) (1994, 2024). Thus, the *Stute* court's basis for imposing two distinct duties under RCW 49.17.060 no longer exists and therefore is not discussed further herein.

a general contractor to comply with WISHA regulations if it retains the same kind of control over the work that justifies the general contractor's per se duty. This reasoning demonstrates that if there is control—be it the general contractor's per se control of the workplace or a jobsite owner's retained control—there is duty.

This same focus on control is also reflected in the WISHA definition of "workplace." RCW 49.17.020(9) states, "'Workplace' means any plant, yard, premises, room, or other place where an employee or employees are employed for the performance of labor or service over which the employer has the right of access or control." WAC 296-155-100 and WAC 296-155-040, quoted above, refer to an employer's duty to provide a safe working environment and place of employment, thus grounding these duties in the "workplace." Here again, control is the starting point from which a general contractor's statutory duty flows, paralleling and reinforcing the reasoning of the above cases.

Lastly, in cases where the court must determine whether a general contractor (or owner) had or retained the right to control the manner of the work, the court considers the "parties' contract, the parties' conduct, and other relevant factors." *Afoa v. Port of Seattle*, 160 Wn. App. 234, 239, 247 P.3d 482 (2011), *aff'd*, 176 Wn.2d 460, 296 P.3d 800 (2013). The proper inquiry is whether the general contractor or owner "retains the right to direct the manner in which work is performed, not whether it actually exercises that right." *Hymas v. UAP Distribution, Inc.*, 167 Wn. App. 136, 154, 272 P.3d 889 (2012) (quoting *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 121, 52 P.3d 472 (2002)).

Thus, C4Digs had a statutory duty to Aucoin to provide a safe workplace

(and comply with applicable worksite regulations) if it had or retained the right to control the manner of Aucoin's work when he delivered pavers to the site.

B

The Aucoins also allege that C4Digs had a common law duty to Aucoin to provide a safe workplace. While there is a general rule in the common law that "one who engages an independent contractor . . . is not liable for injuries to employees of the independent contractor resulting from their work," Washington has long recognized that a general contractor has a common law duty to provide a safe workplace for all employees working onsite, including employees of subcontractors. *Vargas*, 194 Wn.2d at 731. When a general contractor hires a subcontractor and "retains control over some part of the work," the general contractor has a duty to provide a safe workplace within the scope of the general contractor's control. *Id.* (quoting *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978)).

This duty arises from fundamental tort principles. Where a general contractor retains the right to exercise control over the work, "[p]lacing ultimate responsibility on the general contractor for job safety in common work areas will, from a practical, economic standpoint, render it more likely that the various subcontractors being supervised by the general contractor will implement or that the general contractor will [itself] implement the necessary precautions." *Kelley*, 90 Wn.2d at 331. As such, where the general contractor is in the best position to control job safety, it has a duty to do so, and the scope of its control defines the scope of its common law duty.

Our case law explains what "control" over a workplace entails. *Kelley*, a seminal case establishing a general contractor's common law duty to workers on a construction site, describes a "rubric of 'control,'" which encompasses having authority over work conditions and the ability to implement safety precautions. *Id.* at 331-32. The court in *Kelley* also cites the Restatement (Second) of Torts, *id.* at 331, which similarly explains that "control" refers to a general contractor's "retention of a right of supervision [such] that the [sub]contractor is not entirely free to do the work in his own way," RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (AM. LAW INST. 1965). Our Supreme Court reiterated this description of "control" in *Vargas*, stating "when a general contractor engages a subcontractor and 'retains control over some part of the work,' the general contractor 'has a duty, within the scope of that control, to provide a safe place of work." 194 Wn.2d at 731 (quoting *Kelley*, 90 Wn.2d at 330). The court in *Vargas* also reaffirmed, "[t]he test of control is not the actual interference with the work of the subcontractor, but the right to exercise such control." *Id.* at 741 (quoting *Kelley*, 90 Wn.2d at 330-31).

Thus, like with the statutory duty above, C4Digs had a common law duty to Aucoin to provide a safe workplace if it had or retained the right to control the manner of Aucoin's work when he delivered pavers to the site, with the statutory and common law tests of control being functionally identical.

C

*Stute*, *Afoa*, *Vargas*, *Kelley*, and other similar cases—as discussed above—involve accidents that occurred at a location that the parties agreed was part of the "workplace" as that term is defined by WISHA and prior cases. Here, in contrast,

- 12 -

the accident occurred on a street adjacent to the construction site, and C4Digs claims it owed Aucoin no duty in tort because it did not control Aucoin's work there. The trial court accepted this argument when it granted summary judgment, stating "the incident happened in an area that was not under the control of C4Digs, which is where the load/unload zone was."

In this circumstance—where the accident at issue occurs at a location that is adjacent to the acknowledged "workplace"—the same basic control principles determine whether the general contractor owes a worker a statutory and common law duty to provide a safe workplace. Applying these principles, we must determine whether C4Digs had or retained the right to control the manner of Aucoin's work when he delivered pavers to the construction site. To decide that issue, we consider the parties' contract, conduct, and other relevant factors. *Afoa*, 160 Wn. App. at 239. And because the issue was decided on summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the Aucoins (the nonmoving parties). *Kim*, 185 Wn.2d at 547.

Applying these legal principles to the record on summary judgment, there are genuine issues of material fact as to whether C4Digs had or retained the right to control the manner of Aucoin's work when he delivered pavers to the construction site. In the deposition of the C4Digs project manager who supervised the jobsite, the project manager testified, "I had seen several people try to make deliveries on [East John Street]. I immediately directed them to our unloading area." Additionally, when asked what he would normally do if he saw someone making a delivery outside the designated loading/unloading zone, he responded,

"I would direct them to where our designated load zone was and make arrangements for them to park in that location." When viewing the facts in the light most favorable to the nonmoving parties, a reasonable jury could conclude that C4Digs had or retained the right to control the manner of Aucoin's work when he delivered pavers to the East John Street location because he was unable to access the designated loading/unloading zone on 26th Avenue. The trial court erred in deciding this issue as a matter of law in C4Digs's favor.

D

C4Digs's contrary arguments lack merit. In response to the Aucoins' argument that C4Digs owed Aucoin a duty to provide a safe workplace, C4Digs claims that this duty is limited to its own employees and does not extend to employees of a materials supplier. But, as discussed above, a general contractor's duties to provide a safe workplace and comply with applicable worksite regulations clearly extend to *every* employee in the workplace, regardless of who employs them. *See e.g.*, *Vargas*, 194 Wn.2d at 732 ("[A] general contractor owes a common law duty to all employees, including employees of subcontractors, to provide a safe place to work in all areas under its supervision."), 735-36 ("[A] general contractor owes a specific duty to all employees working on the premises to comply with . . . [WISHA].") (internal citations omitted, alterations original). Thus, C4Digs's attempt to carve out employees of materials providers from the scope of its duty fails because its argument contradicts settled case law regarding the scope of a general contractor's workplace duties.

C4Digs also contends it did not owe Aucoin a statutory or common law duty

to provide a safe workplace because Aucoin's accident happened on a street adjacent to the construction site. As with its prior argument, C4Digs fails to establish that it did not have or retain the right to control the work at this location. Addressing that issue, the Aucoins provided evidence in response to C4Digs's summary judgment motion that C4Digs stopped and redirected delivery attempts made on East John Street, which shows that it controlled the manner of work at this location, including Aucoin's delivery of pavers to the construction site. C4Digs's argument that this issue could properly be decided in its favor on summary judgment thus fails.

To support both of the above arguments, C4Digs relies on *Shingledecker v. Roofmaster Products Co.,* 93 Wn. App. 867, 971 P.2d 523 (1999), but this reliance is misplaced. In *Shingledecker*, an employee of a materials supplier was killed when delivering roofing materials to a jobsite before the defendant, Redmond Roofing, undertook any work there. *Id.* at 868. The court dismissed the claim against Redmond Roofing because it "had not yet assumed any control of the premises or jobsite." *Id.* 872-73. Like *Stute* before it, *Shingledecker* focuses on the question of control, reasoning that because Redmond Roofing had not yet assumed any control of the jobsite, it did not "follow that the roofer has a status akin to that of a general contractor for purposes of finding a duty to third parties under WISHA." *Id*. at 872. Redmond Roofing similarly had no common law duty because it had not yet started work on the project. Consequently, the manner of delivery was entirely up to Shingledecker. *Id.*

Here, in contrast, the record indicates that C4Digs had long been in its role as general contractor at the workplace and that it had previously exercised control over attempted deliveries on East John Street. Whereas Redmond Roofers had not undertaken work at the house where Shingledecker died and therefore could not have established and enforced safety precautions for Shingledecker's benefit, here C4Digs had such an opportunity. The project was well underway when Aucoin was killed, and the record indicates that deliveries had been arriving at the workplace without notice and were being unloaded on East John Street. The record also indicates that C4Digs, unlike Redmond Roofers, exerted control over deliveries and was in the best position to implement and enforce safety measures to protect workers. On this record, *Shingledecker* is inapposite.

Lastly, C4Digs argues that because the existence of duty is a question of law, the Aucoins cannot avoid summary judgment by establishing fact issues based on discovery materials, such as depositions. However, while the existence of duty is a question of law, "where duty depends on proof of certain facts, which may be disputed, summary judgment is inappropriate." *Sjogren v. Props. of Pac. Nw., LLC*, 118 Wn. App. 144, 148, 75 P.3d 592 (2003). Here, duty depends on proof of control, and the testimony of C4Digs's project manager supports the Aucoins' assertion that C4Digs had the right to control the manner in which deliveries were made to the construction site, including Aucoin's delivery of pavers. If C4Digs contests the accuracy or reliability of this testimony, it can appropriately raise those arguments when this issue is adjudicated at trial.

In sum, the trial court erred in dismissing the Aucoins' negligence claim against C4Digs on summary judgment. We reverse the trial court's ruling and remand the claim for further proceedings.

IV

Turning to the trial court's summary judgment ruling dismissing the Aucoins' claims against Leonardi, the Aucoins argue (a) the trial court should not have considered Leonardi's summary judgment motion because it was noted for oral argument nine days after it was filed, which is contrary to Civil Rule 56(c), and (b) even if the trial court could properly consider Leonardi's motion, it erred in ruling that Leonardi did not owe Aucoin a duty to exercise reasonable care in scheduling the delivery of pavers. While we reject the Aucoins' first argument, we agree with their second argument and hold, as a matter of law, that Leonardi had a duty to exercise reasonable care in scheduling the delivery of pavers. Accordingly, we reverse the trial court's contrary ruling.

A

Leonardi appears to have noted its summary judgment motion for oral argument nine days after it was filed to enable the trial court to simultaneously consider both parties' summary judgment motions. C4Digs filed its summary judgment motion on October 1, 2021 and noted it for hearing on October 29. Leonardi then filed its summary judgment motion on October 20 and similarly noted it for hearing on October 29. The Aucoins correctly argue that this hearing date is contrary to CR 56(c), which states, "The motion and any supporting affidavits, memoranda of law, or other documentation shall be filed and served not later than

28 calendar days before the hearing." But the hearing did not occur on October 29 as C4Digs and Leonardi initially requested. Instead, oral argument was rescheduled for November 18, 2021, which is 29 days after Leonardi filed its summary judgment motion. That is also the date on which the trial court granted C4Digs's and Leonardi's motions.

On this record, the Aucoins are not entitled to appellate relief based solely on the timing of Leonardi's motion. When a dispositive motion is decided on shortened time, appellate relief is warranted if there was "a lack of actual notice, a lack of time to prepare for the motion, and no opportunity to submit case authority or provide countervailing oral argument." *Zurich Servs. Corp. v. Gene Mace Constr., LLC*, 26 Wn. App. 2d 10, 28, 526 P.3d 46 (2023). In *Zurich*, for example, the defendant had only 48 hours to respond to a dispositive motion and was unable to do so. *Id.* Here, in contrast, the trial court heard oral argument 29 days after Leonardi filed its summary judgment motion—which is a longer timeframe than CR 56 requires. Because the Aucoins had sufficient opportunity to provide opposing legal authority and countervailing arguments and prepare for the hearing, they are not entitled to appellate relief on this basis.

B

Turning to the merits of their negligence claim against C4Digs, the Aucoins argue, just as they did with regard to their negligence claim against C4Digs, that the trial court erred in ruling, "as a matter of law, I don't believe . . . Leonardi owed a duty to Mr. Aucoin." It is a "general principle that '[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical

harm.'" *Michaels*, 171 Wn.2d at 608 (quoting RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 7(a) (AM. LAW INST. 2010)). The scope of the duty owed is determined by concepts of foreseeability, with the relevant question being whether the result of the act is within the "general field of danger" that the actor should have anticipated. *Lee v. Willis Enters., Inc.*, 194 Wn. App. 394, 402, 377 P.3d 244 (2016). Foreseeability is an objective test, inquiring as to what a reasonable person would have anticipated under the circumstances. *Seeberger v. Burlington N. R. Co.*, 138 Wn.2d 815, 823, 982 P.2d 1149 (1999).

Here, Leonardi created a foreseeable risk of physical harm by scheduling a potentially dangerous delivery. Leonardi initiated the transport of pavers, what C4Digs characterized as a "problem delivery" because of the large amount of heavy materials and equipment involved. A reasonable person would foresee a risk of physical harm to people or property flowing from this action, and accidents such as the one that killed Aucoin, in which the heavy materials being delivered or the machinery used to carry out the delivery harms the person making the delivery, are within the "general field of danger" that Leonardi should have anticipated. *See Lee*, 194 Wn. App. at 402. Thus, Leonardi owed Aucoin a duty to exercise reasonable care when scheduling the delivery of pavers.

Notwithstanding the above analysis, Leonardi argues it did not owe Aucoin a duty to provide a safe workplace because Leonardi was not scheduled to start work on the site at the time of the accident. This argument misunderstands the source of the duty at issue here. Questions of control over Aucoin's work implicate the statutory and common law duty of general contractors. In contrast, here,

Leonardi's own conduct—scheduling a "problem delivery"—created a reasonably foreseeable risk of physical harm, and Leonardi therefore had a duty to exercise reasonable care when scheduling the delivery.

Leonardi next argues it did not owe Aucoin a duty to provide a safe workplace because Aucoin's accident occurred on the public street next to the construction site. This argument, like the argument we reject immediately above, has no bearing on whether Leonardi had a duty to exercise reasonable care when scheduling the delivery. The only relevant inquiry is whether an injury to an individual during the course of the delivery is within the general field of danger a reasonable person would anticipate as a risk of scheduling such a delivery. Here, because the harm that Aucoin suffered is squarely within that general field of danger, Leonardi had a duty to exercise reasonable care when scheduling the delivery. The question of whether Leonardi *breached* that duty by not informing C4Digs of the scheduled delivery is a separate and conceptually distinct issue.

Finally, Leonardi contends it was merely a "subcontractor not yet scheduled for work on the job, who had nothing in its contract requiring it to monitor deliveries in the general contractor's loading zone." Leonardi attempts to frame the issue as whether "C4DIGS imposed a duty on Leonardi to Mr. Aucoin by instructing it to advise C4DIGS when the loading zone was needed for delivery." But what Leonardi describes as an argument against finding duty is an argument against finding *breach*, which, again, is a separate and distinct issue.[3] The extent to which

---

[3] *See generally Zorchenko v. City of Fed. Way*, __ Wn. App. 2d __, 549 P.3d 743, 750 (2024) (emphasizing that each of the five elements of a negligence claim is "conceptually distinct" and "all must coexist or a negligence claim will fail," quoting David G. Owen, *The Five Elements of Negligence*, 35 HOFSTRA L. REV. 1671, 1681 (2007)) (Feldman, J., concurring).

C4Digs communicated that Leonardi was obligated to notify C4Digs of scheduled deliveries is not relevant to whether the act of scheduling a "problem delivery" created a risk of the kind of accident that occurred here. Leonardi may contend that it exercised reasonable care, but it is entitled to summary judgment on that issue only "if reasonable minds could not differ." *Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Leonardi has not made such a showing here, nor is the issue of breach properly before us in this appeal.

In sum, the trial court erred in dismissing the Aucoins' negligence claim against Leonardi. That claim, too, is remanded for further proceedings.

Reversed and remanded.

Feldman, J.

WE CONCUR:

Chung, J.

Bowman, J.